SPEDDEN vs. THE STATE, use of MARSHALL, *et ux.*

APPEAL from *Talbot* County Court. It was an action of debt brought upon the *guardian* bond of *Joseph Telford*, executed to the state, on the 11th of February 1820, to recover the balance of the estate due to his ward *Sophia Weaver*, for whose use and that of her husband the action was prosecuted. The defendant, (the appellant,) one of the sureties in the bond, pleaded two pleas. 1. General performance; and 2. That the guardian had accounted and paid, &c. To these pleas there were the general replications of nonperformance, with an assignment of breaches, and that the guardian had not accounted, &c. Issues were joined to the rejoinders to the replications.

1. At the trial in the county court, at May term 1808, the defendant offered in evidence certain accounts rendered by *Joseph Telford*, as guardian of *Sophia Weaver*, (the wife of *William Marshall*, at whose instance and for whose use this action was brought,) to the orphans court of *Talbot* county, passed and allowed by that court, and contended that the accounts, (there being no real estate of the orphan,) so passed and allowed, were conclusive evidence, as well on the guardian as the minor, to show what were the balances respectively due by *Telford* to *Sophia* his ward, at the several times when the accounts were passed and allowed by the orphans court; and that no other evidence was admissible on the part of the plaintiff to show that the accounts were erroneous, or that the orphans court had exceeded their authority, or had made improper or unreasonable allowances to the guardian; for that the accounts were the acts and judgment of the orphans court, having competent and conclusive jurisdiction over the subject matter of the accounts, and of the charges and allowances therein contained. The plaintiff then prayed the opinion and direction of the court to the jury, that the accounts so rendered to, and passed and allowed by, the orphans court, were not conclusive evidence as aforesaid, but that they were *prima facie* evidence only of the balances respectively due as aforesaid, and were open to examination by the court and jury; and that the plaintiff might give other evidence, to show that the accounts were

In debt on a guardian's bond, it was held that the accounts of a guardian rendered to, passed and allowed by the orphans court, were not conclusive evidence either on the guardian or his ward, but *prima facie* evidence only of the balances respectively due by the guardian to his ward at the several times when the accounts were passed and were open to examination by the court and jury; and that the plaintiff might give other evidence to show that the accounts were erroneous, or that the orphans court had exceeded their authority, or had made improper or unreasonable allowances to the guardian, in the accounts.

The orphans court have no authority to allow a guardian for the maintenance and education of his ward for any period of time previous to his appointment; and the jury are not to make any such allowance.

The sums of money allowed by the orphans court to a guardian, for the board, clothing, and education of his ward, is not a final and conclusive ascertainment of the sums to be allowed to the guardian for the maintenance and education of the ward; but it is competent to the plaintiff to show by other evidence that the sums were improperly allowed by the orphans court, or that they were larger allowances than ought to be made to the

guardian for the maintenance and education of his ward.

Where the sum of money allowed by the orphans court to a guardian, for the maintenance and education of his ward, exceeded the annual income of the ward's estate, it was held that the guardian was to be charged therewith, and that the jury would not exceed the sum so allowed to him.

1811.

Spedden
vs
The State

erroneous, or that the orphans court had exceeded their authority, or that the orphans court had made improper or unreasonable allowances to the guardian, in the accounts. And the county court, (*Purnell* and *Worrell*, A. J.) did so give their opinion, and direct the jury accordingly. The defendant excepted.

2. The plaintiff then gave in evidence a copy of the records of the orphans court of *Talbot* county, by which it appeared that *Joseph Telford*, (the principal obligor in the bond upon which this action was brought,) was appointed guardian to *Sophia Weaver*, on the 11th day of February, in the year 1800; and that the orphans court of *Talbot* county had allowed *Telford* for the board, clothing and schooling, of *Sophia*, for a certain period of time previous to the appointment of *Telford* as her guardian. The counsel for the defendant then offered to prove, by parol evidence, that *Sophia* had been actually maintained and educated by *Telford* for the whole period of time so allowed in the said accounts by the orphans court. The plaintiff then prayed the court, to direct the jury, that the orphans court had no power or authority to allow a guardian for the maintenance and education of the minor for any period of time previous to his appointment, and that the jury were not to make any such allowance. The court gave the direction. The defendant excepted.

3. The defendant then offered in evidence certain accounts rendered by *Telford*, as guardian of *Sophia Weaver*, to the orphans court of *Talbot* county, and passed and allowed by that court, in which accounts certain sums of money were charged against *Sophia*, for her board, clothing and schooling, for certain periods of time therein mentioned, and which had elapsed before the time when the accounts were passed and allowed, and which sums of money exceeded the yearly income, or interest, of *Sophia's* estate during the periods aforesaid; and the defendant contended, that the sums of money so charged in the accounts for board, clothing and schooling, of *Sophia*, though exceeding the said income or interest, being allowed by the orphans court, in and by their passing and allowing the accounts, is a final *and conclusive ascertainment by the orphans court of the sums to be allowed to Telford, (the guardian,) for the maintenance and education of his* ward, and that the jury were bound to allow them in this cause; and

the defendant prayed the court so to direct and give their opinion to the jury. But the court refused to give the direction; but on the contrary directed the jury, that the sums of money being charged and allowed by the orphans court, is *not* a final and conclusive ascertainment of the sums to be allowed to *Telford* for the maintenance and education of *Sophia*, but that it was competent to the plaintiff to show, by other evidence, that said sums were improperly allowed by the orphans court, or that they were larger allowances than ought to be made to *Telford*, for the maintenance and education of *Sophia*. The defendant excepted.

4. The plaintiff then gave in evidence, that the orphans court of *Talbot* county had allowed to *Telford*, as the guardian of *Sophia* his ward, in the accounts rendered by him, and passed by the orphans court, the sum of twenty-five pounds *per annum* during his guardianship, and that that sum exceeded the annual income of *Sophia's* estate. The defendant thereupon offered to show by evidence, that the sum so allowed by the orphans court, to *Telford*, for the board, clothing and schooling, of *Sophia*, during the time of his guardianship, were not reasonable allowances, or an adequate compensation to him for such board, clothing and schooling, during the time of his guardianship, and contended, that the jury had a right in this cause to exceed that allowance. Whereupon the plaintiff prayed the court to direct the jury, that inasmuch as the sum of twenty-five pounds *per annum* exceeded the income of the orphan, and had been allowed and ascertained by the orphans court, that the defendant was concluded thereby, and that the jury could not exceed the said sum; and the county court did so direct the jury. The defendant excepted. The verdict and judgment being for the plaintiff, the defendant appealed to this court. The cause was argued at a former term of the court.

*Kerr*, for the Appellant (a). The question stated in the *first* bill of exceptions is, Whether the accounts of a guardian, passed by the *orphans court*, (being the acts and judgments of a court having competent jurisdiction over the

(a) As this is a leading case, and as the Reporters have not been able to procure the opinion delivered by the Court, they have thought it advisable, (though contrary to their general custom,) to report the Arguments of the Counsel at length.

1811.

Spedden
vs
The State

subject matter of the accounts, and of the charges and allowances contained in them,) are conclusive evidence or not, where there is no real estate of the orphan? This question of the *general* conclusiveness of the accounts of a guardian, when passed by the orphans court, as to *all* the items contained in them, will appear, upon the least consideration, not to be the same point as that stated in the *third* bill of exceptions. A decision is understood to have been made in the late general court, on the question of the conclusiveness of the accounts of executors and administrators, passed by the orphans court, by which it was determined that such accounts, when produced on trials at law, were *prima facie* evidence only. How *far* this decision bears upon the true point raised in the *third* bill of exceptions, will be hereafter considered, when the distinction will be shown and proved between the *general* question of the conclusiveness of all judgments of the orphans court, and that of the peculiar act of ascertaining, in their discretion, an allowance to the guardian for the maintenance and education of the ward. But as it is presumed that the decision alluded to, not having been given by the highest law tribunal then existing, will not be considered binding on this court, the point may be still discussed upon the principles and authorities of the common law. Inasmuch as the orphans court have the distinguishing characteristic of a *court of record*—the *power of fine and imprisonment*—it is certainly at least doubtful whether their proceedings, in cases of which they have an express jurisdiction, can be questioned or controled. Why is the judgment of *any* court conclusive? Either because *it is a court of record*, or because *it has competent jurisdiction*. The truth of the records of a court of record must be tried by the records themselves, *and there shall be no averment against the truth of the matter recorded.* 2 Bac. *Abr.* tit. *Courts*, &c. (D 2,) 101. Every court having a power given it to *fine* and imprison, is thereby made *a court of record*, the proceedings of which can only be removed by *writ of error* or *certiorari*, *Ibid*, and the authorities there cited. By the act of 1798, *ch.* 101, *sub ch.* 15, *s.* 18, the orphans courts are expressly invested with a power to fine and imprison. So by *s.* 16, they are empowered to *fine* and commit. Since then these courts clearly possess the distinguishing powers of a court of record, "there can be no averment against the truth of

1811.

Spedden
vs
The State

the matters recorded;" but their proceedings, in all cases within their jurisdiction, are conclusive, except they be corrected by appeal in the manner prescribed by law. By the act above cited, (sub ch. 15, s. 12,) an express juris- diction is given to the orphans courts over the accounts be- tween guardians and wards; and they are invested "with full power, authority and jurisdiction, to *examine, hear and decree, upon* all accounts, claims and demands, existing be- tween wards and their guardians, &c. and may enforce obedience to their decrees in the same ample manner as the court of chancery may." Wherever a court has com- petent jurisdiction over the subject of their decision, such decision is conclusive. Thus the courts of common law in *England* give credit to the proceedings and sentences of the ecclesiastical courts, in matters in which they have a jurisdiction; and if there be a *gravamen*, it must be re- dressed by appeals. 2 *Bac. Ab.* tit. *Of the Ecclesiastical Courts,* (D) 171, (E) 174, and the cases there cited. So likewise of the court of chancery; "for it were very absurd that the law should give them a jurisdiction and yet not suffer what is done by force of that jurisdiction to be full proof." *Buller's N. P.* 243, 244. Even the judgments and decrees of *foreign courts*, having competent jurisdicti- on, are allowed to be conclusive. *Ibid* 244, 245. If, then, this case is to be tested by the only principles of law, and analogous decisions, which can be found in the books, we can suppose no other principle capable of break- ing their force, except that of the impolicy of a construc- tion which shall give to courts, *constituted* as our or- *phans courts* are, the ample and uncontrolable powers con- tended for in this case. But if this court shall now see the question to be really reducible to this simple point of view, they will not hesitate a moment in deciding how far *policy* can be allowed in any degree to influence their deliberati- ons. The power of *settling* the accounts of guardians, is a new and special jurisdiction given to the orphans court by the act of 1785, *ch.* 80, *s.* 9, and it is difficult to conceive why the legislature should have then raised this jurisdicti- on, without intending that the acts of these courts should be held as binding, judicial acts. For what purpose should these courts make a *settlement* of any guardianship account, if immediately afterwards every item of allow- ance or charge adjusted *in the discretion* given them by law might be altered or rescinded?

Before this act of 1785, guardians were only liable to be called to account by the ward, on an *action of account*, in the courts of common law, or by bill in chancery.   Indeed, previously to the act of 1729, *ch.* 4, *s.* 2, compelling guardians to account for the surplus profits of the real estate, it seems an idea prevailed, that *all* the profits belonged to the guardian, he maintaining the ward thereby.

The *second* bill of exceptions consists of two branches—*First.* Whether the orphans courts have any power to make an allowance to a guardian for the maintenance and education of the ward, *for any period of time previous to his appointment. Secondly.* Whether a jury, on evidence given to them that the ward had been actually maintained and educated, during that period, by the guardian, can make any allowance for it, the same having been allowed to the guardian by the orphans court?

On the first branch, the universal practice of the orphans courts to make such an allowance to a person who takes an orphan under his care, and expends his own money in his support, *in contemplation of becoming his guardian,* ought to be respected as a custom, *making a law,* inasmuch as it tends to the great advantage of unprotected orphans, and is an inducement to relieve them at a period when they most stand in need of assistance.   A strong ground of *utility* like this ought to determine the construction on a doubtful point; and if even in strict law it appears to have been originally an error in the orphans courts to adopt such a practice, as it is so consonant to justice, and so uniform a rule, the courts in this case, as they have done in many others, may apply the maxim "*communis error facit jus;*" and they may certainly justify the adoption of such a maxim by an argument from the great inconvenience which would arise from a contrary construction, so many accounts standing upon the records, settled according to this rule.   In numberless instances the executor or administrator of a deceased person has been necessarily led to take care of the infant children of the testator, or intestate, until it was ascertained whether any distributive share remained to them or not; and when they have thus expended their own money upon the orphans, in contemplation of becoming their guardians, (in the event of their being any property to attract a guardianship,) the orphans

courts, in conformity to every principle of justice and good policy, make an allowance for that expenditure, in the subsequent accounts passed by such persons as guardians. Upon the same principle an allowance ought to be made to any other person who shall humanely undertake to investigate the rights of orphans, and meanwhile to protect and support them; and although *the record* does not show this to have been the fact in the present case, yet if any case can be supposed, in which the court would adjudge that such allowance could be made, the exception must prevail. But the other branch of the exception is maintainable in law—*that the jury, on evidence given that the ward had been actually maintained and educated by the guardian for a period of time previous to his appointment, may allow for it in their verdict.* The law raises an assumpsit on the part of an infant for the payment of necessaries furnished him. 3 *Bac. Abr.* tit. *Infancy & Age*, (I) 595. If an infant comes to a stranger, who instructs him in learning, and boards him, there is an *implied contract in law* that the party should be paid as much as his board and schooling are worth. *Ibid.* Before the act of 1785, (before cited,) it seems there were but two modes of remedy against a guardian, to compel him to account, *by bill in chancery,* or by *action of account.* 3 *Bac. Abr.* tit. *Guardian,* (I) 419. For although the act of 1729, *ch.* 24, *s.* 8, declares that guardians shall render an account to their wards of the surplus profits of their real estate, beyond what shall be necessarily expended in the maintenance and education of such wards, the remedy upon this act seems to have been by action of account. It does not appear that either the *commissary* or the *orphans court* had any power of citing a guardian to render an account, which, it seems, he was to do only when the orphan arrived at the age of *fourteen,* and he was compellable then by the orphan only by action of account. *Ibid.* The guardian, either as an accountant in chancery, or on an action of account, was entitled to all equitable allowances and reasonable expenses. *Ibid.* This is due to all *accountants* by the common law. *Co. Litt.* 89, a. Hence it may be argued, that although the *jurisdiction* over the accounts of guardians has been vested in a new court, such guardians are to account upon the same principles as in the former jurisdiction

and supposing a concurrent jurisdiction in the orphans courts, and courts of law, the same rule and principle must necessarily apply to, and govern the same subject. If, therefore, in a court of chancery, or in an action of account, the allowance contended for would have been made to the guardian, so both in the orphans courts, and on a trial at law, in an action upon the guardian's bond, it is equally due to the guardian. The expense of the maintenance and education of the orphan, for the time previous to the appointment of *Joseph Telford* to the guardianship, had created a claim against the infant, which must be considered both as legal and equitable. It was such as would have supported an action at law against the infant. *Telford,* then, being appointed guardian, and afterwards coming to account with the infant, whether in a court of chancery, or on an action of account in a court of law, would have been entitled according to the authorities cited, to such an equitable allowance. In like manner, when accounting with the orphans court, he might equally claim the allowance; for this act, which gave jurisdiction to a new court, to call a guardian to account, did not in any manner alter the *principles* upon which such account should be rendered or settled; and all equitable allowances were still due to him *as an accountant,* before whatever tribunal he might be called to render his account. This case may be considered as analagous to that of *an intruder;* the infant may dissemble the wrong, and call him to account as guardian. 3 *Bac. Ab.* 419. So where any person who has protected and supported the orphan, and expended money in furnishing necessaries for his maintenance and education, shall afterwards be appointed his guardian, it is a confirmation by the orphans court of his expenditures and interference with the infant; and if without being appointed guardian, he might by law recover of the infant the value of the necessaries furnished him, much more is he entitled when claiming an allowance as a *guardian* and *accountant.* In short, it is impossible to conceive why his claiming the allowance, *when accounting as guardian,* should make such claim either the less equitable or legal. But it has been objected that this allowance could not be claimed before the jury, upon the evidence offered, because, as an account in bar, it could not be admitted, *no notice* having been given of such ac-

count in bar, agreeably to the acts of assembly; nor had it been pleaded as a discount. But it is clear that the very question before the jury was upon the accounts passed by the guardian with the orphans court, and that they were referred to *by the* plea of *special performance*, stating that the guardian had accounted with the orphans court, according to law, and the accounts were required by law to be recorded. The account, containing the allowance in controversy, was a matter of record, to which the party was referred by the pleadings in the case, and to which he had access. No other notice than this was ever before required in such a case; and it can never be seriously contended that the law requires a guardian, sued on his bond, to give notice before trial, that he intends to rely upon his accounts, passed by the orphans court, and duly recorded. If this notice be requisite as to *any* items in such accounts, it certainly may be required as to all. The objection of a *want of notice* must therefore appear unfounded.

On the *third* bill of exceptions the question is, Whether the items in the account of a guardian, passed by the orphans court, which constitute the allowance or charge for board, clothing and schooling, (*"maintenance* and *education,"*) for a period of time which had elapsed before the passage of such account, (the amount of which items exceed the yearly income of the orphan,) be a *final and conclusive ascertainment* of the amount to be allowed to the guardian for the maintenance and education of the orphan? Two points were made in the discussion of this question in the court below—*First.* That the ascertainment *by the orphans court* of the allowance for *maintenance and education,* was not conclusive; and *Secondly.* That the ascertainment should be made *previous to an expenditure.* The question of the conclusiveness of the ascertainment made by the orphans court, of the amount to be expended for *maintenance and education,* appears to rest on different and far stronger grounds for the appellee, than the *first* bill of exceptions. It has been before stated, that the act of 1785 vested a new and peculiar kind of jurisdiction in the orphans courts, by requiring that guardians should annually *settle* their accounts with those courts. By the operation of this act the orphans court was made a *party* to such settlement, and invested with a discretionary power of making allowances to the guardian, even beyond the *income*

1811.

Spedden
vs
The State

of the guardian. Such authority to *settle the account, ex vi termini,* implied the power of a conclusive adjustment of the *allowances* to be made, and to suppose an absolute discretion given to the orphans court to authorise such expenditure of the orphans estate, for his maintenance and education, as *they* might think most for his advantage; and that when such expenditure was actually incurred under the discretion of this court, and an allowance accordingly made for it, another tribunal might set it aside, appears to be the grossest absurdity. The authority given, and the power to be exercised in this case, are wholly different from a jurisdiction given to a court, *to administer the law* in cases of any particular class, wherein error in judgment of the law may take place, and ought to be redressed or corrected by appeal. A discretion *to ascertain sums of money to be expended,* must necessarily be supposed uncontrolable by any other tribunal than that in which such discretion is lodged, unless, indeed, some mode of correcting that discretion, *before the act authorised by it were actually done,* had been provided by law. It appears obviously to have been the intention of the legislature, by the act of 1798, *ch.* 101, *sub ch.* 12, *s.* 10, to vest an absolute and uncontrolable power in the orphans courts to superintend the education of the orphan, and to make, *in their discretion,* such allowance for his support as should, under all circumstances, be most advantageous to him, with a view to his future prospects in life. It was designed to do away that mean and contracted policy, which had before prevailed, of hoarding up the little property of the orphan, and suffering him to be brought up, without those advantages of education which might enable him to become useful to his country. Thus in the narrow policy of 1715, the act of assembly (*ch.* 39, *s.* 9,) directs that orphans shall be maintained and educated by the increase of their stocks, and interest of their estates, or *be bound out, &c.* But the impolicy and disadvantages of this system progressively appeared, and we find the legislature, in 1785, allowing an expenditure for the purpose of *maintenance* and *education,* of a part *of the principal* of the orphan's estate, not exceeding one-tenth. The act of 1798, with a liberal and enlightened view to ameliorate the condition of orphans of small estates, and to authorise the application of their little fortune for the attainment of the

1811.

Spedden
vs
The State

greatest of all possible advantages, a good education, vests the orphans courts with a *discretion* to allow as much of the principal of the personal estate as would be sufficient to maintain and educate the orphan in a proper manner. That the ascertainment to be thus made by the orphans court was intended to be conclusive, is clear from the expressions of the act of 1798, (*sub ch.* 12, *s.* 10;) but more particularly from the *proviso* that no part of the *real* estate shall, on account of maintenance and education, be diminished, without the approbation of the court of chancery, or general court, as well as of the orphans court; for this shows, most clearly, that when the *real estate* was not concerned, the discretion of the orphans court, in making the allowance, should be uncontroled. *Exceptio probat regulam.* Where the real estate was to be disposed of for the maintenance and education of the orphan, the discretion of the orphans court was to be checked by the superior discretion of the chancery court, or general court; but when only the principal of the *personal* estate was to be broken upon, the discretion of the orphans court might be exercised without control. The reasons which might have induced the legislature to give this absolute discretion to the orphans courts, are various and striking. In the first place, it seemed necessary that there should be some tribunal with which the guardian should account annually, to see that he was not going on for any length of time in making expenditures in his own wrong. By accounting *annually* he would ascertain what kind of allowance the court were disposed to make for the education and general advantage of the orphan, and his estate; and the tribunal making this allowance, on a settlement of the annual account, with a fresh impression of all the circumstances of the case, were better able to do justice than any court or jury at a distant future day, when many considerations, then justly weighing to induce the allowance, might be unattended to or forgotten. To allow the county courts, or a jury, to control the discretion given to the orphans court in this case, would amount to a *repeal* of the act of 1798, and unsettle numberless cases now supposed to be finally adjusted under the powers given by this act. A guardian has faithfully executed his trust; he may be supposed to have made large expenditures in the maintenance and education of the orphan, and to have fairly accounted with the orphans court,

as directed by law; perhaps, out of abundant caution, he had obtained from the orphans court a *previous* ascertainment of the amount to be expended, and has squared his expenditures accordingly—Is it possible that a construction of the law shall prevail that may subject him to a recovery by the ward of the amount of the very expenditure which he has made for the benefit of the orphan, and under the express direction of a competent tribunal? Such a construction might ruin many of the most faithful guardians, and operate as a gross fraud upon them. It may be here also repeated, that to suppose a *discretion* to be given to one tribunal to authorise a thing to be done, and that *when it is done* according to the direction of that tribunal, another shall rescind it, is too absurd a proposition to bear discussion. The courts surely will never give such construction to the acts of the legislature as must necessarily result both in absurdity and fraud. It has been objected that these accounts of guardians, passed by the orphans court, ought not to be admitted as conclusive evidence against the ward, because *he was not a party to the settlement of them*; and that it has been long settled, that a judgment or a record cannot be offered in evidence against a person *not a party to it.* Upon this principle, the accounts passed by the orphans court could not be evidence at all; but it has been expressly admitted that they are at least *prima facie* evidence. It might also be answered, that the law has made the orphans court *a party to the* settlement, they being the *paramount* guardians of all infants. But in truth, this principle, that a judgment or record is not evidence except between parties, has no application to the subject, from the peculiar nature of the *discretionary* act to be done by the orphans court, *in ascertaining the allowance to a guardian for the maintenance and education of the ward. It is not a case of parties,* as was said by the opposite counsel; *for that reason* it is contended, that the ascertainment made by the orphans court is conclusive. They are appointed the tribunal to superintend the affairs of infants, and are specially invested with a power of determining, with a view to the future prospects of a ward, how much of his estate shall be expended by his guardian in maintenance and education. When this expenditure is made by the guardian, under their sanction, from the very nature of the case there can be no appeal or

redress, except as has been stated, that of fraudulently taking from the guardian the amount of expenditure actually incurred by him, under the express authority of the court. Two decisions of the last general court will be referred to and urged as authorities in this case(a). The first of these cases, (*The State use of Sappington and wife, vs. Massey,*) turned upon the general question of the conclusiveness of the decision and judgments of the orphans courts. The contest arose upon the accounts of an administrator passed by the orphans court. And the distinction between this case, and that of the *special discretionary power*, to fix a sum of money to be expended for a particular purpose, must be obvious. On an executor's or administrator's account, allowances might be made, which are wholly unauthorized by law; and in such cases the party ought to have redress by appeal; but in any part, even of those accounts, where sums are to be ascertained and fixed, *in the discretion* of the court, and the law authorises the exercise of such discretion, it seems very absurd that an allowance so made shall be afterwards annulled. Consider any of the instances of discretion, which the orphans court are empowered to exercise, and the absurdity of the principle contended for will equally appear. In the case of a guardian, (for example,) the orphans court may allow him *to cut and sell wood;* when this shall be done under their authority, shall he be liable in damages as for a trespass? And may not a court of law, or a jury, before whom a contest may arise between a guardian and his ward, with equal propriety undertake to determine that the discretion in this instance was not *soundly exercised* by the orphans court, as in the case of their ascertaining what part of the personal estate ought to be expended for the benefit of the ward? But both the case of *The State use of Sappington and wife, vs. Massey,* and the other relied on (*Selby vs. Gunby,*) were decided by the general court without reference to the increased powers which it is well known the legislature intended to give to the orphans court by the act of 1798. They were cases of an administration and a guardianship account, respectively settled under the former laws, and did not come under the operation of the act of 1798. This court cannot therefore consider them

(*a*) See them at the end of this case.

selves bound by those decisions, more especially as they were not made in the *last resort.*

As to the *second* point on this exception, it could hardly have been *seriously* contended by the counsel, in the court below, that the allowance to a guardian must be always made and ascertained previous to the expenditure. The point is now understood to be given up. The constant practice of the orphans courts to allow, on a settlement for the past year, expenditures exceeding the income, must be conclusive on this point. The difficulty too of ascertaining *before hand* the amount necessary to be allowed, is a strong reason in favour of this practice; and the interest both of the orphan and guardian requires, that the construction which will authorise a confirmation of expenditures, *after they are made,* should prevail. Cases may be put where it would be utterly impossible to ascertain precisely or nearly what would be an adequate sum. But the language of the act of 1798 fully warrants the construction; after first declaring that the guardian shall annually settle an account with the orphans court, it proceeds, in another clause of the same sentence, to say, that the court shall ascertain, at discretion, the amount of the sum to be allowed on such settlement. But if the construction be not strictly *within the letter,* it is clearly within the spirit of the act; and must have been within the intention of the legislature. It is a rule that such construction ought to be put upon a statute as may best answer the intention of the makers, *qui hæret in litera, hæret in cortice.* Whenever the intention can be discovered, it ought to be followed, although such construction seem contrary to the letter of the statute. A thing which is within the intention of the makers of a statute, is as much within the statute as if it were within the letter. 6 *Bac. Ab.* tit. *Statute,* (I 5,) 384.

The opinion stated in the *fourth* bill of exceptions, is clearly inconsistent with that given in the third, viz. that the annual allowance made by the orphans court for the maintenance and education of the orphan, during the time of the guardianship, (the same allowance exceeding the income of the orphan,) was conclusive on the guardian, on a trial at law, and that he could not show by proof that such annual allowance was not reasonable, nor an adequate compensation to him. It had been before decided, (as stated

1811.

Spedden
vs
The State

in the *third* bill of exceptions,) that this very same allowance was not conclusive, but only *prima facie* evidence, when the opposite party was offering evidence to set it aside; and afterwards, when the guardian, availing himself of this opinion, that it was only *prima facie* evidence, offered to show it inadequate, the court concluded him by the allowance. Why it should be held conclusive on one side, and not on the other, it is not possible at this time to be conceived. One solitary *attempt at a reason* was made by the counsel; *that the allowance was made on the application of the guardian.* It does not appear that the guardian applied for any precise sum; and if he had, it could not have made the case different, for the *discretion* of the orphans court might still allow a different sum to be expended, it surely was as competent to the guardian to prove that the allowance was unreasonably small, as to the orphan to prove it too large. The record shows, that the guardian had been allowed by the orphans court for time previous to his appointment, during which he had maintained the infant; and they had given an average allowance for the *whole* time. But if the court had allowed him to go into evidence of the actual expenses of the time, during which he was a guardian, he might have proved himself entitled to as much for those years as had been allowed for the whole time. It is considered that the inconsistency of declaring the *ascertainment,* made by the orphans court, conclusive on the guardian, and not on the ward, is too glaring to need further remark.

*Hammond,* for the Appellee. At the trial in the county court *four* bills of exceptions were taken by the defendant in that court, and upon these bills of exceptions, or some of them, the appeal is grounded. The *first* bill of exceptions states, that certain accounts had been rendered by the guardian to the orphans court, and had been passed and allowed; and that these accounts, (there being no real estate,) were offered as *conclusive evidence* of the propriety of the settlement, but were admitted by the county court only as *prima facie,* &c. To show the error, it is contended that the orphans court, having competent jurisdiction, exclusive or concurrent, over matters of this kind, its decisions are final and conclusive, and not re-examinable but in due course of appeal. To prove the jurisdiction

of the orphans court, the act of 1798, *ch.* 101, was shown; and the 12*th sub ch.* and the 12*th sect.* of 15*th sub ch.* of the act were read; and the exception stated that the accounts in question belonged to this jurisdiction. To support the position that these settlements or decisions were conclusive, many cases have been cited from the *English* books; by which it appears, that the sentences of courts of record—of the ecclesiastical courts—of the admiralty courts—of courts martial and military courts, and the settlements of army accounts before commissioners, are all conclusive; and that the superior courts hold themselves bound by the judgments of the inferior courts. This court have all the cases cited. Therefore the county court was bound to admit the settlement of these accounts as conclusive evidence of their propriety. It is not proposed on the part of the appellee to question the authority or propriety of these cases; for supposing, as it is to be plainly inferred from every case, that proper *parties* were before the court, it is reasonable that they should be bound by the sentence or decision if they neglect to appeal. In the *English* courts of special jurisdiction, the proceedings are those in which formal and proper parties are made to them. They are cited or attached to appear, and opportunities are therefore given to maintain or defend the claims, and appeals are provided for those who consider themselves aggrieved. And this is the true principle of the position relied on. It amounts to this—the jurisdiction of such a subject is given to such a court—you have proceeded to make, or defend, the claim, and the court has decided, and both sides have been heard. If you were not satisfied, you should have made your appeal in the manner prescribed. In the present case the ward is *no party*, and ought not to be concluded. The guardian renders his accounts, and makes his statements and representations, without notice to the ward, or her next friend; and upon this *ex parte* hearing, the court proceeds to settle them. If such settlements should be conclusive upon the ward, they would have the singular effect of depriving *an infant* of those rights which are understood to be secured to all others—the *right to be heard*, before one is condemned—and *the right to appeal* from an unjust decision. 4 *Inst.* 340. But let the act of assembly, called the testamentary system, be fully examined, and the question before the court will be better understood.

1811.

Spedden
vs
The State

The *sub chapters* of that act, relating to this subject, are the 12th and 15th. Some sections of the 12th are those under which the guardians accounts were proposed to be settled. The chapter provides for the *appointment* of guardians, and prescribes their duties in the conduct and management of the estates of their wards. It supposes the proceedings to be altogether on the part of the guardian only; and the only cases in which it supposes the ward, or his *prochein amy*, to be present, are—Where the ward is brought before the court for the purpose of appointing a guardian—s. 2. Where a *prochein amy* applies to the court to call on a testamentary or natural guardian to give bond for the performance of his trust—s. 3. Or probably, on the application of such a friend to call on the guardian to give new security, and on failure, to appoint another guardian—s. 5. In all other cases, according to this chapter, the court may proceed to order and direct a guardian, and settle his accounts, without the presence of the ward or any of his friends, and consequently *ex parte*, and without the opportunity of appeal. It would therefore be unreasonable, and against common right, to consider such proceedings final and conclusive on the ward. Nor can it be understood from the chapter itself that such was the design of the legislature; because, 1. The general *superintending* power of the court of chancery, with respect to trusts, (not meaning here an *appellate* jurisdiction,) is expressly reserved in the last section of this very chapter. 2. The very terms of the guardian *bond* subject his conduct, and management of the orphan's property, to be tested, not only by the orders of the orphans court, but likewise *by the directions of law*; a provision which could be scarcely necessary if the guardian could defend himself simply by the orders of that court—s. 4. Under the first head, therefore, it is conceived, that the court of chancery, upon the orphan's bill, might examine and correct these accounts; and under the last, the bond appears to give the county court the like power. But it is apprehended that the 15th or last *sub chapter* of the act, which more fully assigns the jurisdiction of the orphans court, and regulates the manner of appeal, proves that no sentence, decision or order, was intended to be *final*, except such as the parties might make so by their acquiescence, and without prosecuting an appeal. But *without parties*, the idea of *an appeal* is nothing. Now in the 12th

*sub chapter* one of the branches assigned to the jurisdiction of the court, and one therefore which might become the subject of appeal, is expressly the power to examine, hear and decree, upon all accounts, claims and demands, existing *between wards* and *their guardians*, and to enforce obedience to, and execution of their decrees, &c. This certainly supposes an application made to the court in behalf of the ward, and some litigation on the part of the guardian, or the necessity of his appearance. It therefore supposes a case with proper *parties*. This supposition is confirmed by the cases which follow as other subjects of their power, viz. accounts and claims between legatees and executors and between representatives and administrators; and also by the power to issue process for parties and witnesses, and compel their attendance, &c. And according to this construction, *Sophia Weaver* might by her next friend have applied to the orphans court, and prayed a re-examination of her guardian's account. She might have shown that the allowances were improper, and that her humble destination could never justify the least excess of her income, and upon a hearing of the parties, the court had power to correct and alter the accounts, though passed one, two, or three years before. If then the same court had power to *re-examine* and correct their own proceedings, (after the time limited for appeals in cases where parties are made and appeals do lie,) it proves that those proceedings are *not conclusive,* and may consequently be re-examined elsewhere. For if they were conclusive at all, they would be so upon the orphans court itself. But even in *English* cases there are certain limitations to the rule, which are submitted to this court, and may strengthen their inclination to reject as conclusive, what in reason ought not to be so. In *England* neither the judgment of a foreign court, nor a judgment obtained in any of their dominions, out of *England,* (except cases of admiralty jurisdiction,) is conclusive evidence of the debt or claim. It is only *prima facie* evidence, and the defendant is at liberty to show that nothing, or less, is due, or that the judgment was unduly or irregularly obtained. *Walker vs Witter,* *Dougl.* 1, 2, &c. And yet the exemplification in these cases shows the appearance of *parties* and *regular proceedings.* In admiralty cases the foreign judgment is conclusive; and the reason given is, "If we do not admit their judgments, they

will not admit ours." In addition to these remarks, it is contended that this question has received the decision of the judges of the late general court; first, in the case of *The State use of Sappington vs. Massey, at April term* 1798, and afterwards in the case of *Selby vs. Gunby, at September term* 1801. The first was the case of a legatee against the executor, upon the testamentary bond, and the question was, whether the settlement of the *executor's accounts* were conclusive? It was argued at great length, and many authorities were cited. The other case proposed the same question as *to the accounts of guardians.* In both the court decided, that such settlements were *not conclusive,* but only *prima facie* evidence.

The *second* bill of exceptions proposes two questions— Whether the orphans courts have power to make allowances for board, &c. for a time *previous* to the appointment of the guardian? And if not, whether a jury could lawfully make him this allowance in the present action? It is alleged, by the appellant, to be *the usage* of the orphans courts to make allowances to guardians in such cases. But surely they have no power *by law* to make such allowances, nor in any respect to go beyond the strict relation of *guardian* and *ward;* and a *late usage* could not avail, were any such stated or proved in the exception. But it is not on this ground that the appellant relies. He contends, that the jury had authority to make the allowance, and has cited 3 *Bac. Abr.* 595, *(new ed.)* and 3 *Bac. Abr.* 134, *(old ed.)* If an infant comes to a stranger, and receives board and learning, it raises an *assumpsit* to make him chargeable, if the infant be of the age of discretion. It does not appear in the bill of exceptions, at what time the ward was boarded, nor whether she was of the age of discretion. But suppose that under certain circumstances a stranger might sustain an action of this sort against the ward, after her arrival at age, does it follow that the defendant in the present action can claim the advantage of it by way of set off? In counter claims of this kind, *the account in bar* must be filed in due time, or it must be *pleaded* by way of discount, in order to give notice to the plaintiff. In this instance neither of these modes was pursued; so that the plaintiff could not be prepared to meet such a claim. It is further alleged, that in *England* actions of account, and bills in equity, between guardians and wards, are subject

to every investigation, and the guardian is entitled to every reasonable allowance. *Co. Lit. s* 9, *a.* In actions of *account* the defendant is entitled to all reasonable allowances. This doctrine is certainly correct, and might favour the defendant's claim, if cases upon this subject could show that expenditures *previous* to the appointment were allowed. Such cases have not been shown; and therefore, as far as they depend upon principle, cannot establish what is contended for. An action *of account* cannot be maintained but where there is *a privity* either in law, (as between guardian and ward,) or by the provision of the parties, (as the appointment of a bailiff or receiver.) 1 *Bacon's Abr.* 18. The bill in equity is now substituted in place of the action of account, but doubtless *the privity* between the parties must be still preserved. It may therefore be fairly understood, that the investigation of the accounts can only relate to the period *during which* the privity subsisted. Besides, this is an action at law upon the bond, in which the guardian undertakes to account for and deliver the estate; and it is apprehended that he cannot upon the plea of payment, nor probably by any other plea, defeat or diminish the plaintiff's demand, by evidence of any fact arising *beyond the* date of his obligation. In the case of *Gunby vs Selby,* 2 *Harr. & Johns.* 244, where the question was, whether the ward, in a suit upon the guardian's bond, could entitle himself to rents and profits received by the guardian *prior* to the bond? The court decided he could not. The same principle applies here. If the ward cannot recover the profits so received, the guardian can claim no allowance for expenditures incurred before the execution of the bond.

The *third* bill of exceptions proposes the same question precisely as the first, whether the settlement of these accounts, by the orphans court, be *conclusive,* or only *prima facie,* evidence? But the appellant's counsel supposes, that because the orphans court have *express power* by the act, in certain circumstances, to make allowances to the guardian exceeding the income or interest of the estate, that therefore any exercise of this power is final and conclusive. But many other powers are as expressly assigned to them; and there can be no reason for saying that their proceedings are more conclusive in the exercise of one power than another. The same principles, therefore, which

may induce this court to affirm the opinion given in the first bill of exceptions, will induce it to affirm the opinion in the third.

The *fourth* bill of exceptions states, that *the defendant* offered to prove, that the allowances made to the guardian were insufficient, and that the jury had a right to exceed them; but the court were of opinion, that as the annual allowance *exceeded the income* of the estate, and had been ascertained by the orphans court, *the guardian was concluded* thereby, and that the jury could not exceed the said allowance. The appellant complains of this opinion, as being *inconsistent* with the opinion given in the other bills of exceptions; for he alleges, that if the settlement was open to examination, it was conclusive in no particular. But it will be observed, that though the ward was *no party to this settlement, the guardian was a party.* He rendered the accounts, advocated his own claims, and alleged or proved what he thought proper in support of them. They were passed with his knowledge, and he acquiesced with the settlement. It is therefore quite reasonable and proper that *he* should be *concluded* by it. Besides, the bill of exceptions states that *the* annual allowance made to the guardian *exceeded the income* of the estate. It was not therefore in the power of the county court, or of the jury, to exceed this allowance; because *the law* has declared that the estates of orphans shall be preserved to them, and that the income only shall be applied to their maintenance and education. In certain circumstances, indeed, the income may be exceeded; but of these circumstances the orphans court are the only judges, or those following them in a course of appeal. And with this view it is conceived, that the circumstances inducing this excess should be stated in the records of the orphans court, and that the order allowing it should *precede* the expenditure. The appellant's counsel, in his argument on the *third* bill of exceptions, contended that it was immaterial whether the allowance was made by way of *direction* to the guardian, or at the time of rendering his accounts *after* he had expended part of the principal. As to the question arising on the bill of exceptions, this consideration is not material; but as it was pressed by the counsel, and cases cited on the point, and as it is in this particular that the estates of orphans are so frequently injured, it may not be improper to invite the attention of this court

to what appears in this chapter to be the design of the le-
gislature. Its principal object appears to be the preserva-
tion of the estate *entire* to the ward; and that his support
and education should be sustained out of the interest or *in-
come*. This is apparent from the terms of the bond pre-
scribed in the 4*th sect. of the* 12*th sub chapter*, and from
the 6*th*, 7*th*, 8*th*, and almost all the following sections of
that chapter. After providing for the *security* of the es-
tates of orphans, the chapter then proposes the means of
making them *productive* for the maintenance and educa-
tion of the wards. The real estates, with the negroes and
stock belonging to them, are to be valued, and so cultivat-
ed as to produce this value; wood and timber may be cut
down and sold for this purpose; where the personal estate
consists of specific articles, which are usually unproduc-
tive, they are to be sold, and the money put out to *inte-
rest*. If, notwithstanding these means, "the future situa-
tion, prospects and destination of the ward," should re-
quire a course of *education*, the expenses of which would
exceed the income of his estate, then, but then only, a part
of the principal may be applied; and it may be clearly un-
derstood from the 10th section, in regard to these circum-
stances, that they are to be first considered by the court,
and that the guardian cannot expend beyond the income
without the *previous direction of the court*. The language
is of an expenditure *to be made*; and the court may even
ascertain the *very sum to be* annually expended. And
though a reliance was placed upon the 13th section, which
seems to suppose the allowance made *at the time* of ren-
dering the account, yet, to give it a construction consist-
ent with the other provisions, it is necessary to consider
the words, "unless allowed by the court," to mean, "un-
less allowed by the court," *as above mentioned;* and this
construction is believed to be natural and correct. But
the education and maintenance, the expense of which was
to be allowed to exceed the income, were not those which
were intended for orphans in general of small estates.
Common schooling, where the ward boarded with the guar-
dian, was quite out of the mind of the legislature. The
education of male wards, at colleges or universities, whe-
ther at home or in foreign countries, and the study of pro-
fessions, or the education of female wards at boarding
schools, with the attendance of masters, in the *principal*

accomplishments; and the considerable expenses incurred by these destinations, these are the education and maintenance to sustain which the income of the estates might be exceeded. It may be admitted, however, that cases may occur in common life where an orphans court might justifiably go a great way towards educating and bringing forward a promising and extraordinary ward. In the case of *Sophia Weaver*, there was no pretence whatever for exceeding her income; none is stated on the record, and none ought to be presumed. Supposing the excess to be proper, and to show that a *confirmation* of the expenditures was equivalent to a *previous* allowance, these cases were cited. 6 *Bacon, Ab. (new ed.)* 384. In the construction of statutes *the view* with which they were made ought to be considered, as well as the spirit and letter. *Lee vs. Brown,* 4 *Ves.* 369. What an executor has done properly, without application previously made, will be confirmed afterwards. An endeavour has been made to show what *the view* of the legislature was in these provisions; and in answer to the last case the court are referred to 2 *Bac. Ab.* 684, 685, where the following proposition in substance may be found: If a guardian applies *the profits,* (even the profits,) of his ward's estate, to the payment of incumbrances, (except such as bind the estate by judgment or mortgage,) without the previous direction of the court of chancery, the payment shall not be allowed.

*Bullitt,* on the same side. With respect to the first bill of exceptions, it is contended, on the part of the appellee, that the court below gave a correct decision, and that the judgment ought to be affirmed on that exception. The accounts of a guardian passed by the orphans court are not, and ought not to be conclusive evidence in a court of law of the correctness of the items contained in such accounts. The proceedings of the guardian in the orphans court are *ex parte;* his statements and allegations are submitted to the orphans court without examination or contradiction on the part of the minor, who is not present in court on such occasions, and if present, is incapable of acting for himself, and therefore the accounts ought to be open to examination and the correction of errors, if any, before another tribunal. It is a settled principle, founded in reason and justice, that no person shall be

condemned without an hearing, and neither a verdict nor judgment can be evidence in any case, unless between parties or privies. 6 *Bac. Ab.* 476, 477, &c. *Esp. N. P.* 86, &c. It may be also observed, that the minor has not the chance of an appeal from the acts of the orphans court; for months and years elapse before he gains knowledge of the conduct of his guardian, and by law, an appeal from the acts of the orphans court must take place within a limited period, that is, on summary proceedings immediately or within three days, and on plenary proceedings within sixty days. See the Testamentary Law of 1798, *ch.* 101, *sub ch.* 15, *s.* 18. A court of chancery will not act against a minor without notice, and affording him an opportunity of being heard by his friend, and gives time indeed for investigation after the arrival of the minor at full age. The accounts are *prima facie* evidence, and justly, because they have the sanction of the orphans court, and are therefore to be presumed correct until the contrary shall be shown. It would be unreasonable, after the lapse of many years, to call upon the guardian to establish the several items in his accounts, and therefore, in the first instance, they are considered as correct, and the burthen of proof is on the minor to show that they are otherwise; this removes every idea of hardship on the guardian. The guardian is called on to settle his accounts with the orphans court, with the view that the interposition of that court may furnish some check on his proceedings, and with the further view that his accounts may supply him with *prima facie* evidence of his conduct, and also to supply the minor with grounds for an investigation. Two cases have been decided in the late general court, the one of *The State, use of Sappington, vs. Massey*, on the accounts of an administration sanctioned by the orphans court; the other, *Selby vs. Gunby*, on the accounts of a guardian sanctioned by the orphans court, wherein it was determined that such accounts furnished only *prima facie* evidence. These cases depended on the laws existing before the year 1798, which in principle, if not in terms, are the same as the present laws, and therefore those cases are considered in point. It is admitted, that the decisions of all courts, having jurisdiction over the subject matter, are conclusive on the parties and privies. But no case has been discovered wherein a person, neither party nor privy, has been concluded.

1811.

Spedden
vs
The State

With respect to the *second* bill of exceptions, it is contended that the court below decided correctly, and that the judgment ought to be affirmed on that exception. The orphans court have no power by law to allow a guardian for expenses incurred in the maintenance of the minor, before his appointment. The court can only act on transactions between guardian and ward as such, and connected with that relation. The law directs, that the court shall ascertain the amount of the sum *to be* annually expended in the maintenance and education of the orphan See Testamentary Law 1798, *ch.* 101, *sub ch.* 12, *s* 10. Things that happened between the guardian and minor, before the appointment, must be settled by them, and the guardian is not without a remedy to obtain justice, as a minor is answerable at law for necessaries; but the account cannot be brought in bar to a suit on the guardian's bond for damages; as respects those previous transactions, the guardian and minor are strangers to the court, and cannot be noticed. The principle in chancery, that an act done without order, which upon application to the court would have been directed to be done, shall be sanctioned and allowed, in the same manner as if there had been a previous application and order, does not apply in the present case, because the orphans court could not have noticed at all an application from the guardian before his appointment, he being a mere stranger. It would be dangerous and inconvenient to permit the orphans court to go back beyond the appointment, as it might induce persons without authority or security to take possession of the estates of minors, and to continue such possession many years without account, who afterwards, and when it would be impossible to come at the truth of the case, might greatly impose on the court and minor by the passage of some general account.

With respect to the *third* bill of exceptions, it presents in principle, if not in terms, the same question, and that only which is to be found in the *first* bill of exceptions, and therefore, the remarks on the first exception are referred to as applicable to the *third* exception, with one or two additional objections. It is admitted that the orphans court may, by law, ascertain the sum to be expended by the guardian, and exceed the income, and although the law contemplates an ascertainment previous to the expenditure, it may be further admitted, that an allowance by the

court of a sum expended after appointment and before as-
certainment, shall have the same effect as a previous as-
certainment. Yet it is contended, that the items of the
account previously ascertained, or subsequently allowed,
are open to examination, because the previous ascertain-
ment, or subsequent allowance, may be made on the false
*ex parte* representations of the guardian. The sum pre-
viously ascertained may not be fairly expended by the
guardian, agreeably to the views of the court, so the sum
subsequently allowed may not have been expended by the
guardian, agreeably to his representations to the court.
These facts may be inquired into in a court of law. If it
be found that the guardian has acted honestly, and no im-
position appears to have been practised on the court, no
doubt the jury will adhere to the acts of the court, and
perhaps they are bound so to do.

With respect to the *fourth* bill of exceptions. The inte-
rest or income of the estate of a minor is the first and general
fund out of which he is to be maintained, and neither the guar-
dian, orphans court nor jury, could exceed it previous to the
law of 1785. See the acts of 1715, *ch.* 39, *sect.* 9, and 1729,
*ch.* 24, *s.* 8. By the act of 1785, *ch.* 80, *s.* 9, the orphans
court have a special power to exceed the income, which
power is also given by the act of 1798, *ch.* 101, *sub ch.*
12, *s.* 10. The guardian cannot exceed the income with-
out the sanction of the court. The power of the jury re-
mains as it was prior to the act of 1785. Before the pas-
sage of the acts of 1785 and 1798, the jury had not a right
to exceed the income or interest. These acts do not en-
large the powers of the jury in terms, but confine the ex-
tension to the orphans court, and therefore it is presumed
that a jury at present cannot exceed the income. See Tes-
tamentary Law 1798, *ch.* 101, *sub ch.* 12, *s.* 13.

*Curia adv. vult.*

THE COURT at this term concurred with the county
court in the opinions given in all the bills of exceptions.

JUDGMENT AFFIRMED.

The cases alluded to in the Arguments of the Counsel in the pre-
ceding case, are—

*The State use of Sappington, et ux. vs. Massey,* General Court,
(E. S.) April term 1798. *Appeal* from *Kent* county court. It
was an action of debt upon an administration bond. The gene-
ral issue was pleaded, with liberty on the plaintiff to give in evi-

1811.

Spedden
vs
The State

dence the nonpayment of Mrs. *Sappington's* share of the personal estate of *George Browning.* The plaintiff, at the trial, having given in evidence the will of *Browning,* and that *Sappington* married *Mary Keeling,* one of the legatees of the residue of the personal estate of *Browning,* the defendant produced and gave in evidence his account as administrator *de bonis non* of *Browning's* estate, as the same stood stated in the orphans court of *Kent* county, under the seal of the register of that court. The plaintiff then moved the court to direct the jury, that the said account, under the seal of the register, was not conclusive evidence in this cause of the balance of the said estate, and offered to prove that the disbursement of £163, entered thereon to the credit of the defendant as a judgment recovered against him as administrator *de bonis non* of *Browning,* was not just or right, and that in fact there was no such judgment, but that the judgment was for a debt due to *G. Browning,* the younger, from *T. Browning,* deceased, for the payment whereof the defendant and *S. Bostick* were sureties, and that there was no debt due from *Browning,* the testator, to *G. Browning* the younger, who recovered the said judgment. To this the defendant objected, but the County Court, (*Tilghman* Ch. J.) overruled the objection, and gave this opinion to the jury: "That the paper exhibited under the seal of the orphans court of *Kent* county, is proper evidence to establish the disbursement as there stated, and that this court are concluded in the present cause, by the said account, from investigating and judging of the propriety of the said disbursements, the orphans court being competent, and having jurisdiction, in exclusion of this court, to settle and state the said account, and to allow or not allow the said disbursement as they might conceive right." The plaintiff excepted. And the verdict and judgment being against him, he appealed to the general court. That court *reversed* the judgment of the county court.

*Selby vs. Gunby,* General Court, (E. S.) September term 1801, on an *appeal* from *Worcester* County Court. It was an action of debt on a guardian's bond. At the trial the defendant, in support of his plea of performance, offered in evidence certain accounts passed by the orphans court, in favour of the guardian. The plaintiff was about to disprove certain charges in the guardian's account, as passed by the orphans court, and give evidence of the impropriety of the same, when the defendant objected, alleging that the accounts were conclusive evidence of the several charges contained in them. This objection was allowed by the county court, who refused to admit any evidence to controvert or disprove any of the items or articles contained in the accounts, and were of opinion, that the accounts, as passed by the orphans court, were conclusive and binding upon all parties, as to the matters charged or allowed in them; and that no averment or proof should be allowed against the items contained in them. The plaintiff excepted; and the verdict and judgment being in favour of the defendant, the plaintiff appealed to the general court. That court *reversed* the judgment of the county court.