Gist's Adm'r. *D. B. N. cum. test. an. vs.* Cockey & Fendall.—June, 1826.

Where an action is brought against an executor or original administrator, and pending it he dies, the administrator *de bonis non* may, under the act of 1785, *ch.* 80, be made a party.

Accounts settled by executors or administrators in the orphans court, are *prima facie* evidence to shew the situation of the personal estate of the deceased, in all controversies between the executor or administrator and the representatives of the deceased, and in actions by creditors against the heirs or devisees of the deceased, and to warrant a sale of the real estate by decree of the court of chancery. But such accounts are not evidence at all of over payments by executors or administrators, or that the claims stated in them were debts justly due by the deceased, and chargeable upon his real assets, either at law or in equity.

If after exhausting the personal assets, an executor or administrator does pay debts of the deceased out of his own funds, he has a right only to be substituted in the place of the creditors, and must establish his claim by the same kind of testimony which would be demanded of them.

A simple contract creditor of a deceased, cannot in this state charge his devisee *solely* on the ground that real assets have come to his hands.

And where a devisee expressly promises to pay such a debt, the promise is *nudum pactum*, unless real assets have come into his hands; and where assets have come, such a creditor can only recover in an action against the devisee, by proving the debt, and proving the value of the assets.

Unless bills of exceptions refer to each other they are to be considered as wholly distinct.

APPEAL from *Baltimore* County Court. *Assumpsit*, brought by the appellees against the appellant. The facts of the case, as set forth in the bills of exceptions taken at the trial by the defendant below, are sufficiently stated by the Judge who delivered the opinion of this Court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Heath* and *R. Johnson,* for the Appellant. 1. On the *first* bill of exceptions, they contended, that the accounts of an executor or administrator, settled by him with the orphans court, are not evidence for him to prove that the estate was overpaid, so as to charge a legatee or devisee with the amount so overpaid.

2. On the *second* bill of exceptions they contended—1. That the declaration made by *P. D. Gist,* in her lifetime, that she was indebted to *Fendall,* (one of the plaintiffs below,) on account of her brother, *T. D. Cockey's* estate, and that she was endeavouring to raise money to pay it, &c. was not an acknowledgment or promise to pay him, and not sufficient to support this action. 2. That such a declaration, where no sum of money is mentioned, cannot amount to, or be considered as, a binding promise. 3. That if it was a promise to *Fendall* it did not authorise the plaintiffs to maintain the action, it not being proved that they were partners. 4. That no such action as this can be maintained against a devisee, without a previous request, and an express promise to pay. This was a voluntary payment made by the plaintiffs. 5. That there was nothing in this *second* bill of exceptions which can connect it with the *first*.

3. They also contended, that the executor of *P. D. Gist,* having died pending the action against him, her administrator *de bonis non* could not legally be made a party to it.

On the *first* bill of exceptions, they referred to the act of 1798, *ch.* 101, *sub ch.* 8, *s.* 10, 13, 15, 16; and *Carnan vs. Turner,* 6 *Harr. & Johns.* 65.

On the *third point* in the *second* bill of exceptions, they cited *Graham vs. Robertson,* 2 *T. R.* 282. *Osborne vs. Harper,* 5 *East,* 226. *Brand vs. Boulcott,* 3 *Bos. & Pull.* 235. On the *fourth point—Child vs. Morley,* 8 *T. R.* 613. *Wilson vs. Knubley,* 7 *East,* 134. On the *fifth point*—1 *Bac. Ab.* 528.

As to the right to make the administrator *de bonis non* a party, they referred to the acts of 1785, *ch.* 80, *s.* 1, and 1798, *ch.* 101, *sub ch.* 14, *s.* 4.

*Scott* and *Taney,* for the Appellees. 1. An action of *assumpsit* may be maintained in the names of two persons, without showing them to be partners. *Richardson's adm'x. vs. Stansbury,* 4 *Harr. & Johns.* 275.

2. The administrator *de bonis non* may be made a party, where the executor of the defendant dies pending the action against him. Acts of 1785, *ch.* 80, *s.* 1; 1798, *ch.* 101, *sub ch.* 14, *s.* 4; and 1815, *ch.* 149, *s.* 4. 6 *Bac Ab.* tit. *Statute,* (4) 383, 389.

3. An action of *assumpsit* may be sustained against a legatee or devisee, without showing a previous request, and promise to pay. 1 *Com. Dig.* 187, 195, 196, 200.

4. The *assumpsit* by *P. D. Gist* will enable the plaintiffs to support this action, *Ott. vs. Chapline,* 3 *Harr. & M'Hen.* 323. *Carnan vs. Turner,* 6 *Harr. & Johns.* 65. 1 *Harr. Ent.* 369.

5. The accounts settled in the orphans court by an executor or administrator, showing that he had overpaid the estate, are sufficient evidence to charge the devisee. *Scott vs. Dorsey,* 1 *Harr. & Johns.* 232.

Dorsey, J. delivered the opinion of the Court. This was an action of *general indebitatus assumpsit,* (on promises made by *Penelope D. Gist* in her lifetime,) for money paid, laid out and expended, money lent and advanced, and money had and received, instituted by *Ann Cockey* and *Edward Fendall,* the appellees, against *Joshua F. Cockey,* executor of *Pe-*

*nelope D. Gist.* The executor dying pending the suit, *Joshua F. Cockey,* (the appellant,) obtained letters *de bonis non* on *P. D. Gist's* estate, and was made a defendant in the usual way. He pleaded *non assumpsit,* and the *act of limitations;* and the judgment of the court below was rendered against him.

Two bills of exceptions were taken at the trial; the *first,* stating that the plaintiffs offered in evidence to the jury, that on the 20th of May 1811, a certain *Thomas Deye Cockey,* of *Baltimore* county, deceased, being then seized and possessed of a large and valuable real estate, by his last will and testament, duly executed, devised the whole of his real estate to the said *Penelope Deye Gist,* and appointed her, and her husband, executor and executrix of his said last will, and died, leaving his will unrevoked, which was proved according to law. That said husband and wife refusing to take out letters testamentary, administration was granted by the orphans court of *Baltimore* county, in due form, to the appellees, who assumed upon themselves the burthen thereof. That *Thomas Gist,* the husband of *Penelope,* departed this life soon after the death of *Thomas D. Cockey,* "and that the said *Penelope D. Gist* took possession of, and sold a part of the real estate, so devised to her as aforesaid; and that the proceeds of the said real estate, so sold, were paid over by the said *Penelope D. Gist* to the plaintiffs, and by them expended in the payment of the debts of their testator." That the plaintiffs further offered in evidence their accounts, settled as administrators aforesaid with the orphans court of *Baltimore* county, to prove that they had paid debts due by the deceased *Thomas D. Cockey,* to an amount, exceeding the estate which came to their hands, by the sum of $1,230 14; for the recovery of which this action was prosecuted. To the admission of which evidence the defendant by his counsel objected; but the court overruled the objection, and permitted the testimony to go to the jury.

The *second* bill of exception states, that "the plaintiffs, in order to support the issue on their part, and prove the promises laid in the declaration, gave in evidence to the jury, by *Anderson Warfield,* a witness produced, that he applied to Mrs. *Penelope D. Gist* to purchase a piece of land in *Anne-Arundel* county, devised to her by the said *Thomas D. Cockey;* she

referred him to *Edward Fendall*, and said she would be bound by any bargain he might make. That he accordingly bargained with said *Fendall*, and afterwards paid a part of said purchase money to said *Penelope*, and obtained a deed, and gave her his note for the balance; and afterwards paid a part of that note to *William M'Mechen*, and a part to said *Edward Fendall*. And offered in evidence by Mrs. *Norman*, that a short time before the death of said *Penelope*, witness asked her to make a present to her niece Miss *Cockey;* she said she was indebted to *Edward Fendall* on account of her brother *Thomas D. Cockey's* estate, and she was endeavouring to raise money to pay it; and as soon as it was paid she would make a present to Miss *Cockey*. Whereupon the defendant, by his counsel, moved the court to direct the jury, that upon the evidence so given, the plaintiffs are not entitled to recover in this action." Which direction the court refused to give.

Many grounds, in the progress of the argument, have been urged by the defendant's counsel for the reversal of this judgment. And first, it is contended that the proceedings in the court below are erroneous, and the suit abated for want of a proper defendant to the action, there being, as is alleged, no provision of law warranting the appearance of an administrator *de bonis non*, as a defendant to an action commenced against an executor or original administrator. The clause in the act of 1785, *ch.* 80, *s.* 1, on which this question arises, is this—"that no action brought, or to be brought, in any court of law in this state, shall abate by the death of either of the parties to such action; but upon the death of any defendant, in a case where the action by such death would have abated before this act, the action shall be continued, and the heir, devisee, executor or administrator, of the defendant, as the case may be, *or other person interested on the part of the defendant,* may appear to such action." The intention of the legislature is so clear, their command so positive, that no suit shall abate by the death of any defendant, but that the same shall be continued, and proper parties made *"toties quoties,"* until a trial or judgment, that this court are bound to give, if necessary, the most extended and liberal construction to this legislative provision to effectuate its object. But the occasion demands not such an interpretation.

The words, "or other person interested on the part of the defendant," most manifestly embrace this and all similar cases; and it is difficult to imagine for what other purpose that expression was introduced into the law. In this opinion the court have adopted the uniform construction given to this part of the act of assembly, from the time of its passage till the argument of this case. The judgment of the county court, therefore, stands unimpeached by this objection.

The next question arises on the *first* bill of exceptions. Were the accounts passed by the appellees with the orphans court, in the manner stated in that exception, admissible as evidence before the jury, for the purpose for which they were offered? We think they were not; no sufficient foundation being laid for such a departure from the ordinary rules of evidence. Such accounts are always received as *prima facie* evidence, to shew that the whole personal estate has been, or has not been, exhausted in the due course of administration, in all controversies between executors, administrators, and the representatives of the deceased; and to the same extent are competent testimony in this and similar actions, by creditors, against the heirs or devisees of deceased persons, and to warrant a sale of real estate by decree of the court of chancery for the payment of debts; and consequently, to shew that an heir or devisee, by an express promise to pay, may be bound in an action of *assumpsit* by a creditor of the deceased. These accounts are not *prima evidence*, or any evidence at all, of overpayments made by executors or administrators, or that the claims stated in such accounts were debts justly due by the deceased, and chargeable upon his real assets, either at law or in equity. If the contrary principle were to prevail, heirs and devisees would be completely at the mercy of executors and administrators, who would, in fact, administer as well the real as the personal assets. By the rules of law prescribed for the government of their conduct, they are only authorised and required to pay the debts of the deceased out of the personal estate; and if transcending the limits of their duty, they see fit to pay, with their own means, all they can reasonably ask or expect either upon principles of law or equity, is, that they be substituted to all the rights of the creditors whose demands they have liquidated. It hence necessa-

rily follows, that such claims must be established against the heir or devisee, by the same kind of testimony which might be demanded of the original creditors themselves.

In considering the *second* bill of exceptions, it may not be amiss to advert to the character of the parties to the case before us. It is not an action of *assumpsit*, brought by a simple contract creditor of the deceased against the devisee, seeking to charge him, solely on the ground that real assets have come to his hands, if it were, the appellees must of necessity fail, as no such action can be sustained in this state. *Preston vs. Preston*, 1 *Harr. & Johns.* 366, and *Lodge et al. vs. Murray's heir and devisee*, 1 *Harr. & Johns.* 499. Nor is it such an action, between such parties, founded on an express promise to pay by the devisee. But suppose it were, what must the plaintiff prove to entitle him to recover? In the first place his original debt or cause of action. The accounts from the orphans court, (the only evidence offered for that purpose,) being rejected by the court's opinion on the *first* bill of exceptions, the plaintiffs must be defeated on that ground. The plaintiffs in this action, if an express promise were proved, are in precisely the same condition with such a plaintiff.

Let us, however, concede that the plaintiffs' cause of action, as far as relates to the debt originally due, is fully established, and that the testimony offered in the *first* bill of exceptions be incorporated in the *second*, are the plaintiffs then in a condition to obtain a verdict? Assuredly not. Before the jury can find for the plaintiffs, it must be shewn that real assets came to the hands of *Penelope D. Gist*, with which she is under a legal or moral obligation to satisfy the debt sought to be recovered; otherwise the promise to pay is a *nudum pactum*, to be enforced neither at law nor in equity. The evidence as to such assets is looked for in vain in the record. It is indeed, in proof, that *Thomas D. Cockey* was, when he executed his will, seized of a large real estate; but that he continued so until his death, or that the devisee was afterwards seized or possessed thereof, is no where alleged. The only evidence on this subject is, that she took possession of, and sold part of said real estate, and paid the proceeds thereof to the plaintiffs; and the statement of the purchase made by *Anderson Warfield*, who

leaves us nothing by which we can even conjecture whether his purchase were to the amount of ten dollars, or ten thousand dollars. In the absence of all proof as to the quantum of real assets with which it was attempted to charge the defendant, the jury were incompetent to give a verdict for the plaintiffs.

In the view which has been taken of this case, the court have considered it as if the evidence offered in the *first* bill of exceptions were ingrafted with that contained in the *second,* and that the prayer thereon was upon all the evidence offered in the cause. But they are not warranted in so doing. The bills of exceptions are destitute of the usual words of connexion, and contain none of similar import by which they may be connected. It does not appear, with any thing like legal certainty, which exception was first tendered or signed. The court, therefore, can judicially only recognize them as separate and distinct bills of exceptions, wholly unconnected as to the facts they contain, and the prayers and the opinions predicated upon them. In this point of view the *second* bill of exceptions would present the case of a creditor of the deceased seeking to recover against a devisee in the absence of all evidence of an original debt, or that any amount of real assets ever came to his hands; and that recovery to be had too upon an inferential promise to pay, to be drawn from loose and inconclusive testimony.

The court dissent from the opinions given by the court below on both bills of exceptions.

JUDGMENT REVERSED.