Bland, Chancellor.
This matter standing ready for hearing, and having been submitted by the plaintiff’s solicitor on notes, and no one appearing on behalf of the Register of Wills, the proceedings were read and considered.
It may be well to observe, that upon the return of a subpoena duces tecum the party, so summoned, may in court object to produce the documents; yet, if the objection is overruled, the court-will compel the production ; (a) it therefore, becomes necessary to consider whether the cause shewn in answer to the subpoena can be deemed sufficient.
It is evident, as well from the pre-existing judicial institutions as from the general complexion of the course of proceedings in the anew Orphans Court, that those tribunals Üave been constituted after the manner, and are regulated by the principles of law derived from the Ecclesiastical Courts of England. And therefore, we shall be more likely to procure light and help from the course of proceeding in those English courts, than from any other source.
The question here presented, is whether the written vouchers or proofs upon which an account has been settled in an Orphans Court can be considered as parts of the records or proceedings of that court ? For if they do, then it is clear, that the register or keeper of them cannot be called upon to bring them before this or any other court; because, as constituting a part of the public judicial records of the state, they cannot be removed from the place where they are by law directed to be kept; since copies of all such records are made legal evidence for every purpose, and those copies may he obtained by any one on paying the legal fees. It is however, urged, that even supposing they were required to he deposited with the Register of Wills for safe keeping; yet he may be required to bring them into this court, upon the same principle, that, in England, the Register of the Ecclesiastical Court may be compelled to produce an original will.
A will is an instrument of a peculiar character. It is in some respects like a deed of gift, by which the title to property is passed from one to another without any valuable consideration. A deed of gift takes effect in the life-time of all concerned, who may see to *479 its proper execution; but a will can only commence its operation after the death of the donor. A last will is an instrument whereby the author makes a disposition of his property, most commonly, in separate parcels, in different estates, and to a variety of persons, among whom there are, or may be, mutual or conflicting interests to a considerable extent. A will always disposes of property, which, upon the death of its owner, would otherwise, according to its nature, be carried by operation of law in different directions. The personalty, which is the primary and natural fund for the payment of debts, would be placed in the hands of an administrator, who is considered in this court as a trustee for the benefit of creditors and next of kin; and the realty would devolve upon the heirs. The will, in most respects, follows these different kinds of property, as if it were, in fact, a separate and distinct deed of gift of each. The same solemnities necessary to constitute a valid will disposing of real estate are not required to one which disposes of nothing more than personal property, or in so far only as it disposes of personalty. A probate of such an instrument which is effectual as to personalty is by no means conclusive as to the realty; and the tribunal before which it is directed to be brought for probate, although clothed with a limited power as to personal property has no sort of jurisdiction in relation to titles to real estates.
Hence, although a will, if it were like an ordinary deed of gift, which conveyed property to no more than one person, might with propriety be entrusted to the custody of the donee alone; yet it is sufficiently obvious, from the various and rival interests which almost always arise among those who claim under a will, as well as between them and the representatives of the deceased as on his intestacy, that there ought to be some legal place of common deposit where it may be safely kept for the benefit of all concerned; and that there should also be some mode of having it finally and conclusively authenticated as well in regard to the real as the personal estate.
In England it is the duty of an executor to have the will proved before the Ecclesiastical Court, either in common form, by his own oath, or by the testimony of witnesses; in case its validity should be disputed. When it has been proved, the original is deposited in the registry, and a copy thereof is made out under the seal of the court, and delivered to the executor, with a certificate of its having been so proved, all which together is usually styled the probate. (b) *480 The probate by witnesses in the Ecclesiastical Court is conclusive as to the personal estate; (c) but it does not in any degree authenticate the will in so far as it may have made any disposition of real estate; and, consequently, if its validity.be questioned as to that, it will be necessary to prove it as fully as if nothing had previously been done. It is a privilege of the heir to have an issue devisavit vel non to try the validity of a will; but this privilege may be rejected, as the Chancellor is not obliged, in any case, to send out an issue. (d)
But the Ecclesiastical Court having obtained legal possession of the will, and having become pledged for its safety, in respect to the personal estate, of which it had made some disposition, that court cannot, therefore, allow it to be delivered exclusively into the hands of any one who may claim under it, lest the interests of others might be put in peril; and yet, as regards the realty, it cannot be legally proved unless the original itself be brought before the court and jury, who alone are. competent to determine its validity. To remove'this difficulty and to prevent injustice, the Court of Chancery has assumed a jurisdiction, upon petition, to order the original will to be delivered by the Register of the Ecclesiastical Court to the petitioner, on his giving bond for its safe return, for the' purpose of its being brought before the proper tribunal; or even sent abroad to be exhibited to witnesses who can testify respecting it, but who cannot be brought before the court to whom the question of its authenticity is to be submitted. (e)
In Maryland also, it is the duty of the executor to have the will proved; and, for that purpose, to have it lodged with the Register of Wills of the proper county. But now, as under the Provincial government, there seems to have been but one form of probate, and that is, by the oath of the executor, and also by the testimony of witnesses; and not merely in the one or the other of those forms as in England, (f) After the probate has been thus made here, the will is recorded; and the original will is, in all cases, held for safe custody by the register, as is done by the English Ecclesiastical Court. This practice or common law of Maryland by which *481 wills are required to be recorded, has been recognized and affirmed by positive legislative enactments, (g) But it appears, that those originals have been very carelessly preserved; for, in some of the counties there are long spaces of time within which, under the Provincial government and since, there are no original wills to he found; although the records of them in the same offices are in a good state of preservation.
It seems, that in Scotland and in Ireland also, the original will itself, when proved, is retained in the office of the court in which it has been authenticated in regard to moveables; and, therefore, if the same will makes any disposition of property in England, it may he proved in the Ecclesiastical Court there by producing a copy only. (h)
But the mere copy of a will made and deposited among the records of a court of another state is not here deemed sufficient to warrant a probate, and the granting of letters testamentary upon it. (i) And, although it is declared by our law, that the Orphans Court may take the probate or cause to he proved any last will or testament, although the same concern the title of lands ;(j) yet such a probate has been held lo be no more than prima facie evidence; and, consequently, if the validity of the will be denied, it must be regularly established here, as in England, according to law. (k) It would, therefore, seem clearly to follow, that here, as in England, if it became necessary to establish a will of real estate, that, on application, this court would lend its aid, and order the register, if the original will were then in his keeping, to deliver it to the applicant, on his giving bond for its safe return, for the purpose of having its validity investigated and determined upon in due course of law; or, considering the original will as being a part of the public records of the state, relief might be had by a special legislative enactment. (l)
*482 From this brief review of the law in relation to wills, it is evident, that none of those cases relied on, which shew, that the1 Court of Chancery has undertaken to have the original will itself taken from the custody of the register and delivered out to a party,- or brought before the court for the purpose of investigation and proof, can have any material bearing upon the matter now under consideration.
It may not, however, be amiss to observe, that, in relation to the probate and custody of wills, our law appears to stand as much in need of amendment as that of England. ‘I have often thought it a very great absurdity,’ says Chancellor Hardwicke, ‘that a will which consists both of real and personal estate, notwithstanding it has been set aside at law for the insanity of the testator, shall still be litigated upon paper depositions only in the Ecclesiastical Court, because they have a jurisdiction on account of the personal estate disposed of by it. I wish gentlemen of abilities would take this inconvenience and absurdity into their consideration, and find out a proper remedy by the assistance of the Legislature. But, as the law stands at present, it is not in the power of this court to interpose, so as to stop the proceedings in the Ecclesiastical Court.’ (m) The original will itself should in all cases, be committed entirely to the safe custody of the Register of Wills, as a part of the documents of his office, for which he should be expressly held responsible; since as an original it can only have authenticity from its being found in its proper place; (n) it should be required to be recorded; and if its validity should be drawn in question, either as to real or personal estate, an issue should be made up, to which all who claim under it, and the heirs, should be,made parties, to be tried in the county court of the county where the original was kept; and it should be the duty of the Register of Wills to attend and have it with him at the trial. The original will should only be allowed to be taken from the office on its being shewn to be necessary to exhibit it to a witness who could not be made to attend at the trial; and, in such case, the court before which the trial was to *483 be had, should require bond with surety for its safety. And if any will should not be drawn in question within ten years after it had been recorded, it should he deemed altogether valid and conclusive as well in regard to the real as to the personal estate of which it had made any disposition. (o)
It has been urged that there is nothing to be found in all our extensive and detailed legislative enactments, in relation to the administration of the estates of deceased persons, which authorizes or requires such papers as are now called for to be deposited with the Register of Wills; or their being recorded by him, much less the receiving of any copies of them, which he might give as evidence in any way whatever.
In England neither an executor nor an administrator can be cited by the Ecclesiastical Court, ex officio, to account; nor can a creditor who calls an executor or administrator to account before that tribunal be allowed to controvert the account and put him to the proof of its statements. But a legatee, or next of kin, may there call an executor or administrator to account, and controvert every item of the account rendered. And therefore when an account has been so passed upon, it becomes final and conclusive between the parties to it, by the judgment of a competent and proper tribunal. (p)
Here executors and administrators are required to account within a limited time; and, if they fail to do so voluntarily, they may be cited before the Orphans Court and compelled to render an account. The adjusting of such accounts by the Orphans Court appears to be, in most respects, a part of its merely voluntary, or ex parte jurisdiction; for it disposes of the whole matter without opposition; and it has not been clothed with the power to entertain jurisdiction of a suit instituted for an account against an executor or administrator, at the instance of any one but a legatee, or next *484 of kin. (q) When an executor or administrator presents himself before the Orphans Court, for the purpose of voluntarily rendering an account, it is only authorized to receive and pass the account in a particular manner and upon vouchers of a specified description. The inventory including all chattels real, personal property and debts, due to the deceased, forms the aggregate of the debts or charges; and the payment of debts and expenses as shewn by the Vouchers then produced form the sum total of the credits for which he prays to be allowed. After the account is thus adjusted and finished it is recorded. And when the whole estate cannot be finally settled by one account, the executor or administrator is allowed to pass a first, second, &c. accounts, until the whole is closed. (r)
According to this course of proceeding in the settlement of the accounts of an executor or administrator, which prevailed under the Provincial government, and has been continued ever since, when the specially described vouchers or documents, from which the account was made, have been allowed by the court; it is said to be proper to set a mark on them denoting the allowance and entry, lest they should happen to be offered a second time, and the estate be doubly charged. (s) Whence it clearly appears, that although the account itself is recorded, yet that the vouchers, or the proofs from which it has been framed are never impounded, as in England ; (t) or retained by the court for any purpose; nor are they made a part of the record, or considered as of themselves, like an original will, forming a portion of the records or proceedings of the court; since, as it is said they are marked; because being at once re-delivered to the executor or administrator they may be offered a second time. (u)
These testimonials whereby an executor or administrator sustains his account ought not, certainly, to be allowed a higher degree of importance than similar documents brought before this court by litigating parties. When books and papers are brought into this court, as parts of the necessary evidence in a case, they are, during the time of their being so detained, said to be impounded; and therefore, while so retained here, they cannot be taken from the *485 Chancery office by a subpoena duces tecum from any other court, (w) But the party to whom they belong does not relinquish, nor can he be deprived of any right to them merely by their being shewn or brought here as evidence; and therefore they may, after the final determination, be withdrawn at any time, on application, almost as of course on leaving copies; as they do not properly form any part of the pleadings or judicial proceedings of the court. (x)
But it is well established, that the account itself, which has been thus settled and recorded in an Orphans Court, is not, in any respect conclusive, either in favour of or against the executor or administrator; and therefore, it is of the greatest importance to himself, that he should be permitted to retain in his own bands all his vouchers, as the muniments of his account, in case it should be questioned elsewhere, or he should be called to a more rigid settlement before another tribunal. (y)
I am therefore of opinion, that no sufficient cause has been shewn why the papers asked for should not be produced; as they cannot, in any sense, be considered as a part of those public records, proceedings or documents properly belonging to the office of Register of Wills, of which certified copies can be received as evidence.
Whereupon it is Order,ed, that a peremptory subpoena duces tecum issue returnable forthwith.

 Field v. Beaumont, 1 Swan. 209; Ridgelyv. Dorsey. — Ordered, that a subpana duces tecum issue when applied for. — Proceedings in Chancery, lib. W. K. No. 1, fol. 97. — Beall v. Waggoner. — Summons issued to P. W. Morgan &. C. Conner to produce the respective agreements between plaintiff and defendant lodged in their hands or either of them.— Chancery Proceedings, lib. S.H. lett. B.fol. 6.

 2 Blac. Com. 308.

 Toller Executors, 77.

 Tucker v. Sanger, 6 Exch. Rep. 49; Attorney-General v. Burridge, 6 Exch. Rep. 358.

 Frederick v. Aynscombe, 1 Atk. 627; Morse v. Roach, 1 Dick. 65; S. C. 2 Stran. 961; Williams v. Floyer, Amb. 343; Lake v. Causfield, 3 Bro. C. C. 263; Forder v. Wade, 4 Bro. C. C. 476; Carrington v. Payne, 5 Ves. 411; Hodson v.—, 6 Ves. 135; Ford v.—, 6 Ves. 802.

 Dep. Com. Guide, 72.

 1798, ch. 101, sub ch. 2, and sub ch. 15, s. 9; Carroll’s Lessee v. Llewellin, 1 H. & McH. 162; Smith’s Lessee v. Steele, 1 H. & McH. 419; Collins’ Lessee v. Nicols, 1 H. &.J. 400; Hall v. Gittings, 2 H. & J. 121.

 Toller Execu. 71; Robertson on Succession, 281.

 Ratrie v. Wheeler, 6 H. & J. 94; Armstrong v. Lear, 12 Wheat. 169.

 1735, ch. 39, s. 2, and 29.

 Carroll’s Lessee v. Llewellin, 1 H. & McH. 162 ; Belt v. Belt, 1 H. &. McH. 409; Collins v. Elliott, 1 H. & J. 1; Collins v. Nicols, 1 H. & J. 400; Cheney v. Watkins, 1 H. & J. 533; Massey v. Massey, 4H. & J. 142; Darby v. Mayer, 10 Wheat. 465. — Since affirmed by 1831, ch. 315, s. 1 — passed 14th March, 1832.

 The Register of Wills of Baltimore was authorized by a special act of Assembly, to deliver the original will of Robert Burney, deceased, to his heirs, to enable *482 them to establish their title, as such, to lands in Ireland, of which he had died seised in fee simple. — 1807, ch. 12. By a similar act the Register of Wills of Worcester, was authorized to deliver the orignal will of Joseph Delastatius, deceased, tor the purpose of having itrecorded in Accomack county, Virginia. — 1808, ch. 89. And by a special act the Register of Wills of Charles county was directed to transmit the original will of Daniel of St. Thomas Jenifer, to the Court of Appeals, to be there used in a case then depending, and then to he returned — 1822, ch. 117.

 Montgomery v. Clark, 2 Atk. 378.

 1 Stark. Evid. 170.

 It has been since declared, by an act passed on the 14th of March, 1832, that every will of which probat shall be taken by any Orphans Court shall be retained in the office of the register, and not delivered out to any person; and every issue of devisavit velnon from a Court of Chancery shall be tried in the county of the office, at which trial the said will may be adduced in evidence under the care of the register, or one by him deputed, under a subpcena, duces tecum, issued on a special order of the court holding such trial; and in like manner such will may be produced in evidence on the trial in any court of this state, of any issue involving the said will, and requiring its production in the opinion of said court; but nothing herein contained shall authorize the keeping said will out of the care and eustody of the register. — 1831, ch. 315, s. 16.

 Toller Execut. 492, 495; Canterbury v. Wills, 1 Salk. 315; Greerside v, Benson, 3 Atk. 253; Anderson v. Fox, 2 Hen. & Mun. 259.

 3 Blac,. Com. 98; 1798, ch. 101, sub ch. 15, s. 12.

 1798, ch. 101, sub ch. 10; Dep. Com. Guide, 48; 1831, ch. 315, s. 4.

 Dep. Com. Guide, 39.

 Nielson .v. Cordell, 8 Ves. 146.

 Bowyer v. Green, 6 Exch. Rep. 87.

 Winchester it. Fournier, 2 Ves. 449; Rex a. Dixon, 3 Burr, 1687; Morris a. Creel, 2 Virg. Ca. 49 ; Harris v. Bodenham, 1 Cond. Chan. Rep. 143.
Colemore v. Carroll. — Bill, subpoena. — Upon proof of service last court, ordered attachment unless appearance. — Answer filed.
19/A July, 1725. — Ordered, that all books, papers and vouchers in the answer referred to be subjected to the order of this court, and lodged with the register for the complainant’s perusal; and that he may take copies thereof, if he thinks proper; and the originals to be returned to the defendant within ten days after lodging them. Ordered, that James Carroll, the defendant, pay Mr. Colemore’s, the plaintiff’s, charge for the copy of those books he lodged, unless he shew cause to the contrary. Chancery Pmedings, lib.J. R. No. l,fol. 98.
Aeinstost v. Stoddart. — Bill and answer.
December, 1729. — Ordered, that the hooks and papers referred to in the answer he produced this court in order to bo lodged with the register; which were lodged accordingly. — Chancery Proceedings, lib. J. R. No. 2, fol. 9.

 Davers v. Davers, 2 P. Will. 410; Hodson v. Warrington, 3 P. Will. 35; Owen v. Jones, Anstr. 505; Maccubbin v. Matthews, 2 Bland, 251.

 Scott v. Dorsey, 1 H. &. J. 231; Spedden v. The State, 3 H. & J. 251; Gist v. Cockey, 7 H. & J. 139; Owens v. Collinson, 3 G. & J. 37; Anderson v. Fox, 2 Hen. & Mun. 259.