ADAM AND JOHN MILLER *vs.* JAMES ALLISON *et al,*
June, 1836.

The act of 1825, ch. 117, does not require exceptions to be filed, to the auditor's statement, made for the purpose of exhibiting the rights of the parties, as they had been solemnly adjudicated by the Chancellor by a previous order.

The ordinary statements of the views and opinions of the auditor upon the rights of the parties, designed to give them an opportunity, more distinctly to present to the Chancellor the matters in contest, are within the act of 1825, ch. 117, and should be excepted to in the court of chancery.

The construction given to the statute *Westm.* 2. 13 *Edwd.* 1, ch. 18, adopted by analogy, and applied to the act of 1810, ch. 160, requires that judgments at law from the time of their rendition should be liens upon equitable estates in real property, and are recognized as such in courts of law.

When a *fi. fa.* on a junior judgment is levied on an equitable interest on the lands of the debtor, and subsequently, a *fi. fa.* on a senior judgment comes to the sheriff's hands, the senior judgment must be first satisfied.

APPEAL from the court of *Chancery.*

On the 26th of August, 1833, the appellants filed their bill in the court of Chancery, against *Jeremiah L. Boyd, Charles Ridgely,* and others, alleging, that in the year, 1830, the

defendant, *Boyd*, purchased of the defendant, *Ridgely*, certain real estate in the city of *Annapolis*, and paid for the same, but without obtaining the legal title. That in 1831, the complainants obtained a judgment in *Anne Arundel* county court, against *Boyd*, upon which in 1832, they caused an attachment to issue, and to be laid upon the same property, and that a judgment of condemnation was rendered at the April term, 1833. That a *fieri facias*, was subsequently issued, which by reason of the fraud, &c. of *Boyd*, and others, could not be made available, in consequence whereof, they pray the interposition of the court, and that a deed may pass for its sale.

The Chancellor accordingly on the 23d of July, 1834, decreed a sale of the property, "for the satisfaction of the claim of the complainants, and of all others who are the creditors of the said *Boyd*, at the time of the institution of this suit, according to their respective priorities, and due proportions." The property was sold, the proceeds brought into court, and by order of the Chancellor, passed on the 4th of March, 1835, directed to be applied, " in satisfaction of the several judgments against the said *Boyd*, according to their priorities as shown by the date of each respectively."

An account was stated in conformity with this order, on the 19th of March, 1835, which the Chancellor, on the 12th of May, 1835, ratified and confirmed.

The complainants appealed from these orders, by which a preference was given to judgments in favour of *Allison*, and another of the appellees, they being older than the complainants' judgment.

The cause was argued before BUCHANAN, Ch. J. and DORSEY, CHAMBERS, and SPENCE, Judges.

PINKNEY for the appellant contended :

1. That *Boyd's* interest in the property, being but an equitable one, the judgments of the appellees were not liens upon it. *Bogart vs. Perry*, 1 *John. Ch. R.* 52. *Barton et al, vs. Rushton et al*, 4 *Dessau, Rep.* 373. Act of 1810 ch. 160.

2. That the act of Assembly subjecting equitable estates to be sold under execution, makes executions alone liens upon such estates, &c.

3. That the appellants by their attachment, acquired a preference over the other creditors.

RANDALL and BRICE for the appellees insisted.

1. That courts of equity, in analogy to the principles which obtain at law, consider judgments liens upon equitable titles to real estate, according to their dates. *Hanson vs. Barnes' lessee*, 3 *Gill and John.* 359. *Lee and wife, and Jordan vs. Stone and McWilliams*, 5 *Ib.* 1.

2. But if this was not so, still the decree of the Chancellor in the present case must be affirmed, because by its very terms the proceeds of the sale, are to be distributed among the creditors according to their priorities, and of course, all who come in under it, are estopped from resisting its execution.

DORSEY, Judge, delivered the opinion of the court.

A preliminary question in this case presents itself for our determination. Are we at liberty to consider the exception now taken to the auditor's account of the 19th of March, 1835, no exceptions to that account having been filed in the court of Chancery? The 2d section of the act of 1825, ch. 117, prohibits in appeals from courts of equity, the reversal of any decree, upon any exception to any account, unless it shall appear by the record, that such exception was taken or made in the court from whose decree such appeal shall be made. It is true, exceptions were taken below to the account stated by the auditor on the 14th of February, 1835. But those exceptions were premature; that account made no disposition, or appropriation of the fund in controversy; and therefore furnished no ground for the exceptions to it taken by the parties. The auditor's account of the 19th of March, we do not regard as one to which exceptions were required to be taken by the act of 1825. It was not the ordinary

statement, of the views and opinions of the auditor, upon the rights of the parties, but it was ·the mere formal ministerial act of that officer, exhibiting a statement of the rights of the parties, as they had been solemnly adjudicated by the Chancellor, in his order of the 4th of March, 1835. It was no part of the design of that statement, to give the parties litigant an opportunity more distinctly to present to the view of the Chancellor, the matters in contest between them. All controversey had been terminated by the previous decision of the Chancellor; so far from its being the duty of the solicitors to have filed exceptions to such an audit, to have done so we think would have been uncourteous and disrespectful to the Chancellor.

The act of 1825, presenting no obstacle to the revision of the orders of the Chancellor, which have been appealed from, are the grounds assigned for their reversal sustained? is the next inquiry. It is insisted, that a judgment at law is no lien on an equitable estate in land, and consequently, that the lien acquired by the appellants, through the proceedings under their judgment, entitle them to the payment of their entire claim, to the exclusion of all other creditors. If the first part of this proposition were true, the subsequence would undeniably follow. But the first part of it is not true, and of consequence the second cannot be sustained. In *Lee and wife, and Jordan vs. Stone and McWilliams,* 5 *Gill and John.* 1, this court determined, that in equity, a judgment was a lien upon the equitable real estate of the debtor, and this decision was made without reference to the act of Assembly of 1810, ch. 160. By that act, equitable estates in lands were subjected to sale under writs of *fieri facias.* Adopting by analogy the construction given to the statute of *Westm.* 2, 13, *Ewd.* 1, ch. 18, since the passage of the act of 1810, judgments are legal liens, upon equitable real estates, from the time of their rendition, and will be recognized as such in courts of law. Should therefore, a *fieri facias* on a junior judgment, be levied upon an equitable interest in the lands of the debtor, and subsequently, a *fieri facias* on a senior

judgment comes to the sheriff's hands, the senior judgment must first be satisfied.

The decree of the Chancery court is affirmed with costs.

BUCHANAN, Ch. J. " I dissent from the proposition advanced in this case, that a judgment at law is a lien at law, upon a mere equitable interest."

DECREE AFFIRMED.