## GREENBURY M. WATKINS, one of the Executors of ROBERT W. WATKINS, *vs.* JAS. H. BEVANS and THOMAS BEVANS, Adm'rs of EDGAR A. WATKINS.

The orphans court passed an order directing certain executors to state their final account, and specifying the items with which they should be charged, and on the day following the executors stated their account in pursuance of this order, which the court approved, and ordered a distribution of the estate in accordance with the account.   HELD :

That upon an appeal from the order of distribution, the first order directing the account, and all questions arising upon the account itself, were open for review.

A testator devised to his wife certain lands, " which I value at fifty dollars per acre, during her natural life," and if the lands so devised do not amount to one-third of his estate, his executors were to make up the difference to his wife.  HELD :

That the design of the testator was that his widow should take the land, if she stood by the will, at the price he placed upon it, and in ascertaining her third of the estate the land should be valued and charged at fifty dollars per acre.

Where land is devised to a widow for life, and she has enjoyed the whole during her life, her administrator cannot claim the allowance for her life estate which the widow would have received if the land had been sold during her life under a decree in equity.

Where an executor's account is of several years standing, and the balance due the estate by it has been distributed, it is error in the orphans court to vacate it without any evidence of its incorrectness, and again bring this balance into the estate.

Where a testator directed that his widow should be permitted to purchase a certain amount of his personal estate, without being required to give security for the same, his executors cannot be held responsible for more of the debt so contracted by the widow than they can recover from her estate, if she died insolvent.

APPEAL from the Orphans Court of Washington county.

Robert W. Watkins died in 1845, leaving a will, containing, among others, the following devises and bequests:—" *Item.* I give and bequeath to my wife Ellen the lands purchased of the Chesapeake and Ohio Canal Company, west of Tonoloway creek, containing about forty-five acres, and which I value at

fifty dollars per acre, during her natural life, and at her death to revert to my two sons, Thomas Wilson and Edgar Augustine, share and share alike. If the lands so devised and bequeathed does not amount to one-third of my estate, independent of my claims against the canal company, then my executors are to make up the difference to my wife."

"*Item.* I will and devise to my wife, that she have the election to purchase at the sale of my personal estate to the amount of $700, without being required to give security for the same, and she is to pay the interest on the same annually for the support and use of my two children, Thomas and Edgar."

He then directed the proceeds of his bonds and claims against the canal company, when disposed of, to be equally divided between his wife and sons. He also gave to his wife a gold watch and chain, and $200 in cash, in addition to all former bequests, and to his son Thomas a gold watch. The above are all the clauses of the will material to this case.

The testator died shortly after executing this will, leaving his said wife and two sons surviving him, all of whom afterwards died, and letters of administration were granted upon their several estates. The record then shows that the orphans court met on the 1st of March 1854, having summoned the executors to make a final settlement of this estate. On that day Snively, one of the executors, asked the court to receive a paper purporting to be an appraisement by two persons, under seal, of two gold watches, at $80 each, which he stated had been delivered over to the legatees thereof named in the will, as an additional inventory of appraisement of the personal estate, which the court received; and then passed an order adjudging the distribution of the balance due the estate in the *second* account of the executors, settled on the 15th of June 1849, to be null and void, and directing them to settle a *fourth* account, charging themselve with $2064.50, being the balance due the estate and distributed *by* said second account, with interest from the 15th of June 1849; with $9078.76, being the balance due the estate upon their *third* account, settled the 11th of January 1853; with $701.54,

being the amount of goods purchased by the widow at the sale of the personal estate of their testator, with interest from her death, and with $160, the appraised value of the gold watches, above referred to.

Testimony of several witnesses was then taken, to the effect that the *fee-simple value* of the land mentioned in the first item of the testator's will was not more than $50 per acre, and that the widow died before she attained the age of thirty years.

The executors, on the 2nd of March 1854, stated their fourth and final account, "in pursuance of the order of the court of the 1st of March 1854," which the court, on the same day, approved, stating that it was "settled in obedience to the order of the court of 1st inst.," and directed a distribution upon the basis thereof. In this order of distribution the court construed the first item of the will to mean, that $50 per acre was the value the testator put upon the land in fee-simple, and that the widow's life estate in it was not valued at that sum. They then valued her life estate at $964.98, being three-sevenths the value of the fee, that being three times the amount allowed in lieu of dower by the rules of the Circuit Court of said county, as a court of equity. They then proceed to ascertain according to the will the value of the testator's estate, exclusive of the claim against the canal company, and assume that the nett amount of the personal estate is $5252.95, to which they add the value of the land, as stated in the will, $2250, making $7502.95, one-third of which is $2500.98, from which they deduct the said $964.98, which leaves $1536.70 as the difference between one-third of the estate and the life estate in the land devised to the widow, which sum they decree shall be paid to her administrators; and also the legacy of $200, and $80, the appraised value of one of the gold watches above referred to, and then distribute the balance of the estate as provided for by the will. From this order of distribution Watkins, one of the executors, appealed.

The cause was argued before Le Grand, C. J., Eccle-ston, Mason and Tuck, J.

*J. Dixon Roman* for the appellant, argued:

1st. That the order of distribution was erroneous:—1st, because the court assumes the nett personal estate to be $5252.95, when in fact it is a different sum; 2nd, because it directs the value of the watches to be paid, although they had been delivered to the legatees; 3rd, because there was no evidence that the executors had received the $701.54, or that the estate of the widow was solvent; 4th, because the court values the land to the widow at three-sevenths of its price, instead of the whole value charged in the will. This latter is the main question in the case. We say the will itself fixes the value of the land, and that the widow was to take it at that valuation, and the difference between that value and one-third of the estate was to be made up to her. This is the plain meaning of the words of the will, and no extrinsic evidence is admissible to explain them. 5 *Md. Rep.*, 297, *Walston vs. White.*

2nd. The appeal opens the whole case, though not taken from each order separately, and, besides the order of distribution appealed from, *approves* the account passed *in obedience* to the order of the 1st of March 1854, and this order therefore is open for review, and we say it was erroneous, because: 1st, the appraisement of the watches is a nullity; 2nd, there is no error apparent in the distribution of the 15th of June 1849, which the order annuls, and the court therefore could not declare it void; 3rd, the court had no right to charge interest upon the balance so distributed; 4th, there is no evidence of any balance of $9078.76.

*Richard H. Alvey* for the appellees, argued:

1st. That all matters prior to the order of the 2nd of March 1854 are not open for review here, because no appeal is taken from them. All these matters therefore are out of the case, and the only point open here is as to the estimate placed upon

the land by the court below. But there is still another objection, so far as the propriety of the court's action in relation to the watches is complained of by the appellant. He is seeking to contradict his own act, for these watches were brought into the estate by his co-executor, whose acts are binding upon him.

2nd. The construction placed upon the will by the court below was correct. The words are to be transposed so as to read, "I give to my wife, during her natural life, the land, &c., which I value at $50 per acre," thus making the estimate made by the testator to be its fee-simple value. 2 *Md. Rep.*, 87, *Linstead vs. Green.* 1 *Jarman on Wills*, 412. The testator intended this devise in lieu of his wife's dower and legal interest in his personal estate, and to place the construction upon it contended for by the other side, would operate as a fraud upon her rights, because it would give her less than she would receive under the law. Parol proof is admissible, in the construction of this devise, to show that the land was worth but $50 per acre in fee-simple, and that therefore the testator did not intend that to be his estimate of the widow's life estate in it. 1 *Powell on Devises*, 28, in 21 *Law Lib.*, 286. 1 *Greenlf. on Ev.*, secs. 286, 287, 288.

Tuck, J., delivered the opinion of this court.

This is an appeal from an order of the orphans court of Washington county, directing distribution of the estate of Robert W. Watkins.

It appears by the record, that on the 1st of March 1854, the court held a meeting for the purpose of closing this estate, and directed the manner in which the appellants should state their final account as executors, specifying the items with which they should be charged. On the 2nd of the same month the executors accounted, "in pursuance of the order of the court," which account the court approved, stating that it had been "settled in obedience to the order of the court," and directed a distribution of the estate according to that account and upon their construction of the will of R. W. Watkins. From this last order the appeal is taken; and one question for our decision is, what are the points presented for review?

The order of the 1st of March was not final, but merely directory as to the manner of taking the account. The whole proceeding shows, that further action on the account was to be had before a distribution could be made. In chancery, when instructions are pronounced for an audit and an account is taken and confirmed, an appeal from the order of ratification opens all questions arising on the account. *Miller vs. Allison,* 8 *G. & J.,* 35. This appears to be a similar case and must be governed by the same rule. And if this were not so, the order itself, without reference to the account being erroneous in several respects, we should express our opinion upon the whole case in order that a proper account may be taken when the cause is remanded.

The court below placed a construction upon the will which is clearly wrong. The testator devised his land to his wife at a valuation. His purpose was, that she should take the land, if she stood by the will, at the price he placed upon it. *For* what other reason did he estimate its value in his will but that, in ascertaining the third of his estate devised to her, there might be no controversy between her and the children as to the value of the land? She took the land for life and held it during that period, enjoying the use of the whole, and yet the orphans court have charged her only with three-sevenths of the fee-simple value. If the widow had lived and the land had been sold under a decree in equity, she would have received a proportion of the proceeds in lieu of her life estate, and the children would have received the balance. But such allowances are made because the enjoyment of the estate is taken away by the sale, and equity allows an equivalent according to the value of the unexpired life. We apprehend that where the estate has been enjoyed for the whole term by the tenant for life, this commutation cannot be claimed by her administrator. The effect would be to give a life estate, and something besides, after her death. We cannot suppose that the testator meant his estate to be administered in any such manner. In ascertaining her third of the estate, the land must be valued and charged at fifty dollars per acre.

We are at a loss to imagine upon what ground the settle-

ment of the *second* account of the executors was set aside.
That account, and the third, are not in the record, and probably
it is defective in other respects. If intendments are to be made
in aid of the present account and order, the settlements previ-
ously made with the orphans court are entitled to the same
support; and when we find that an account of several years'
standing is vacated without any evidence of incorrectness, and
after the balance had been distributed, as appears by the order
of the 1st of March, we cannot do otherwise than say, that as
far as this record shows that balance was improperly brought
into the estate a second time. The interest on that amount
charged in this account is manifestly erroneous, if the principal
was distributed under the second account. And if the balance
on the second account was not paid over, it does not follow
that that account and distribution were incorrect, and there is
nothing before us to show that they were liable to any objection.

The charge of $9078.76 is *prima facie* correct. It appears
to be the balance due on the last preceding account. If im-
properly charged in this account it can be corrected.

The item of $701.54, for purchases at the sale, cannot be
sustained on this record. It is by no means certain what the
testator designed by this clause of the will. He did not intend
it as a bequest to the widow, because he calls it a purchase,
and directs that she shall pay interest annually for the use of
the sons, but to whom, or for what time, does not appear. If
this sum has been collected by the executors from her estate,
they are chargeable therewith, and with interest. If it has not
been collected, and her estate is insolvent, they cannot be held
responsible for more than they can recover, because they are
not in default, having no power under the will to demand
security; which may be allowed, we presume, where the in-
terests of creditors are not involved. In adjusting the account
with the widow's estate as to her share under the will, the
executors should be allowed to retain thereout what they may
be chargeable with on this debt.

We do not approve of the account in respect to the alleged
value of the watches. The appraisement is not valid, as such,
though the appellants cannot object to being charged upon this

admission in the absence of a valid appraisement. But, taken as a whole, it shows that the watches had been delivered to the legatees. The executors were entitled to a corresponding credit, and should not have been required to pay their value in money.

Mrs. Watkins' estate is entitled to the legacy of two hundred dollars and interest. If it has been paid, as suggested, the proof must be adduced by the executors.

It is impossible for the court, from this meagre record, to ascertain the correct balance for distribution. We can only indicate the principles that should govern in making a final settlement with the orphans court.

The debts and expenses of administration, together with the canal debt, are to be deducted from the personal estate. The balance should be increased by the land at the valuation prescribed in the will, and if this valuation does not equal one-third of the balance so increased by the price of the land, the difference is to be made up out of the estate. In addition to this, her estate is entitled to the watch and legacy of two hundred dollars, and one-third of the canal bonds and other claims against that company. One-half the balance of the estate and one-third the canal debt are to go to the estate of Edgar, and the same amounts, with the watch, to the estate of Thomas.

The order of the orphans court will be reversed and the cause remanded.

*Order reversed and cause remanded.*