RHODES *v.* ROBIE.

CURTESY; GUARDIAN AND WARD; ACCOUNTING BY GUARDIAN; BURDEN OF PROOF; INTEREST; PARENT AND CHILD; COMMISSIONS; RELEASE; SURETIES; PAYMENT INTO COURT.

1. Where a remainder in fee after a life estate is limited to several as tenants in common, one of them a married woman, and the precedent estate is terminated during the coverture, the husband's right of curtesy will attach on the death of the wife.

2. Possession by a cotenant in common is sufficient seisin in the wife to give curtesy to the husband upon her death.

3. The account of a guardian, stated in and passed by the Orphans' Court under the provisions of the Testamentary Act of Maryland of 1798, Ch. 101, in force in this District, is *prima facie* correct; and the burden is upon a party impeaching it to show affirmatively wherein it is incorrect.

4. On an accounting by a guardian, he is not chargeable with interest on the proceeds of sale of real estate belonging to his wards where he was entitled to curtesy in such real estate and in lieu thereof to the interest during his life on the proceeds of the sale.

5. A father is bound to support his minor children, and in general cannot, when guardian, claim the right to use the income of their property for the purpose, much less disturb the principal; but there may be circumstances under which both principal and income may be so applied.

6. The allowance of commissions to a guardian, and the amount

9 Ct. App.—21

thereof, is a matter within the sound discretion of the Orphans' Court.

7. A release executed by a ward, after coming of age and after marriage, and in which she is joined by her husband, which declares that a certain sum is accepted in full compromise and settlement of any amount due her by her former guardian, and which is not sought to be impeached in any manner, is conclusive as to any claim on her part against the guardian.

8. The Supreme Court of the District of Columbia, holding an Orphans' Court, is without power, in a proceeding for the settlement of the accounts of a guardian, to require the sureties on the bond of the guardian, who are not parties to the proceeding, to pay into court their respective proportions of an amount found to be due from the guardian to his wards.

No. 581. Submitted October 6, 1896. Decided November 2, 1896.

HEARING on an appeal from orders of the court below holding a special term for Orphans' Court business in a proceeding for the settlement of the accounts of a guardian. *Reversed.*

The COURT in is opinion stated the case as follows:

These appeals are taken from two separate orders passed by the Supreme Court of the District of Columbia holding a special term for Orphans' Court business. The first of these orders directs the vacation and restatement of a prior account stated by the guardian and approved by the court, and upon which distribution was declared to the several wards several years before the passage of the order appealed from; and the second of the orders appealed from directs the sureties on the guardian's bond to bring certain sums of money into court within a limited time. The appeals are taken by the guardian, the father of the wards.

In order to a proper understanding of this case, it is necessary to refer to what has been brought into it by the agreement of counsel for the respective parties, and that is a certain equity proceeding had in the Supreme Court of this District for the sale of the real estate devised by the will of Samuel J. Grimes, late deceased. It appears by that proceeding that Samuel J. Grimes, the brother of Mrs. Rhodes,

the former wife of the appellant, and the mother of his wards, was seized of certain real estate situate in this District, and that he died seized thereof in 1867 or 1868, leaving a last will and testament duly executed, and which was admitted to probate, whereby he devised all his real estate to his wife, Henrietta Grimes, for and during the term of her natural life, and after her death then he gave and devised the same to his brother and sisters, share and share alike, as tenants in common, their heirs and assigns. Upon the death of the devisor, his widow, the devisee for life, took possession of the real estate, and continued in possession until her death in November, 1877. It appears that Mrs. Rhodes, one of the sisters of the testator, and one of the devisees in remainder, died in February, 1878, leaving her husband surviving, and three female minor children as her only heirs at law. On May 3, 1886, these three minor children of Mrs. Rhodes, by their father as their next friend, filed a bill for sale and partition of the real estate so devised; and to this bill all the parties entitled under the devise were made parties, either as complainants or defendants, except the surviving husband of Mrs. Rhodes, who was not a party in any other capacity than that of next friend to his children. In the bill it is alleged "that the complainants and defendants were the only persons who were in any way entitled to any interest in and to said real estate and premises, under the last will and testament of Samuel J. Grimes;" and the truth of the allegations of the bill was sworn to by the surviving husband of the wife and next friend of the children. A decree was passed for sale and the property was sold, without any reference whatever to any right by the curtesy in Rhodes, the surviving husband of Mrs. Rhodes. The purchase money was brought in and distributed to the parties to the bill; and the shares distributed to the three minor children of Mrs. Rhodes were paid over to the father as guardian. In none of the proceedings does it appear that it ever entered the mind of the court, or of the parties concerned, that there was any right

by the curtesy in Rhodes, the surviving husband, though the remainder was devised to Mrs. Rhodes prior to the passage of the Married Woman's Act of April 10, 1869.

In the application to be appointed guardian to his children, Rhodes stated that his wife, at the time of her death, was interested as tenant in common in certain real estate, which yielded a small income, and since her death such income had been collected by certain parties who had made only partial accounting for the same; and so far as he had discovered there was then due and owing to his children, as heirs at law of their mother, about $500, more or less. He further stated that a proceeding was then pending for the sale of the real estate; that the children would be entitled to one-fourth of the net proceeds of sale of said property, which he estimated to be about $2,000, more or less. He was appointed guardian on the 21st of May, 1886.

The amount of the proceeds of sale was distributed at different times, and it was not until November, 1889, that the first account of the guardian was stated, and was approved and passed by the court. In that account, the guardian charged himself with $2,511.93, as the proceeds of the sale of the real estate, and interest on the deferred paymayments, and with $220.94, as rents collected. And he obtained credits for payments made by him to the amount of $583.49, including counsel fee of $25, and expenses of $230.94, paid on account of last illness of the deceased mother of the children, and for monument to herself and deceased children, in accordance with her request;—leaving balance of $2,149.38. The guardian neither claimed anything in lieu of curtesy in the property, nor did he, in that account, charge commission on the amounts received and distributed by him.

On the 5th of December, 1895, Mabel Robie, one of the children of Mrs. Rhodes, deceased, who had married, filed a brief petition, asking that the guardian should be required to render a full and complete account and inventory of all

money, goods, and property and estate held by him as guardian. There is no attempt to surcharge and falsify the previous account of the guardian, nor is there any specific charge of any wrongdoing by him, save and except the delay in stating an account and making a final settlement with the petitioner as one of his wards. Thereupon a second account was stated and filed. This was objected to; and the court, on the 17th of January, 1896, ordered that the second account be not approved; and that the guardian forthwith file a full and complete account of his trust, *from his appointment by the court, together with vouchers and evidence in support thereof*, and that said account should be filed within seven days from the date of the order. Thus, the first account that had been stated by the guardian, and examined, approved and passed by the court, was utterly ignored and rendered of no effect, notwithstanding it had remained of record as a settled account for more than six years.

Under this order, another second account was stated, but that was excepted to, and the exception was sustained by the court; and the court then proceeded by a more specific order, of February 14, 1896, to direct how the account should be stated. It directed that the guardian should render a new and full account of his trust from the date of his appointment, and that, in said account, he should be charged with the full amount of the estate of said wards which had come to his hands, with interest at the rate of six per centum per annum from the date of the receipt by him of each item, to wit: $795.60 from September 4, 1886; $1,005.92 from July 8, 1887, and $931.35 from June 30, 1888; and that said guardian in such account shall not be allowed credit against the estates of his said wards for the expenses of the last sickness and burial of his wife and of his two children, or with the expense of the monument to the memory of his said wife and children, or for the alleged expenses of the maintenance and education of his said

wards, or with any commissions for his services as such guardian; the order to be complied with within ten days; and the cause was referred to the Register of Wills to state the account.

The Register stated an account under this order, and subsequently re-stated the same under the direction of the court, varying the result in some small particulars only. By the method adopted of stating the account under this direction of the court, the general balance shown to be due the wards by the first account stated and passed is nearly doubled, and this result is produced principally by the amounts of interest charged up against the guardian. The account thus stated was approved and passed by the court on the 20th of March, 1896.

The guardian brings the case here for review, and he assigns several errors upon which he relies for reversal.

1. He insists that he was entitled as tenant by the curtesy in the land devised to his wife, and that the court erred in treating the proceeds of the land, when sold, as if no right by the curtesy existed.

2. That the court erred in vacating and setting aside his first account, approved and passed by the court, on November 8, 1889, and disallowing the credits therein given the appellant.

3. That there was error in the orders of the court in requiring the appellant to be charged with the sums therein mentioned, and interest thereon, and in disallowing him credit for the expenses and commissions claimed by him, as stated in his second account proposed for approval, but which was rejected by the court.

4. That there was error in charging appellant with $766.35, or any sum, as due Margaret A. Carrington, notwithstanding and in total disregard of her valid release of all claim by her.

*Mr. S. R. Bond* for the appellant:

1. The record discloses the fact that the property from which the fund in question was derived was real estate owned by Sarah E. Rhodes at the time of her death, and that she died intestate. Of this fund $220.94 was rents which had accrued from said real estate, and a part of the balance was interest which had accrued on the sum realized from its sale. How much the interest amounted to is not distinctly stated, but as the first instalment received from the proceeds of the sale was $699.06, the others were doubtless of a like amount. This would make the interest $414.75 and leave $2,097.18 as the principal sum realized from the sale. All except this principal became the absolute property of the appellant, and he is also entitled to the interest or other income thereof as tenant by the curtesy, and is only bound to preserve the principal for his wards so that they shall receive it at his death, no matter when or how the real estate was acquired by his wife. *Smith* v. *Smith*, 21 D. C. 289; *Rice* v. *Hoffman*, 35 Md. 334. To secure this he gave bond, and during his life is not accountable to his wards unless it be for waste.

Therefore all the proceedings of the Orphans' Court including the decrees appealed from, were erroneous, at least in so far as they required him to account for the amount originally received as rents and interest, or for subsequent interest on the principal sum. If the amount which he received from his wife's estate were regarded as personalty, it became his absolutely at her death.

2. Even if the fund were considered as belonging to his wards, still it is submitted that the action of the court was erroneous: (1.) In setting aside the settlement of appellant's first account which had been approved and passed by the court in 1889. This was done without petition or request, and without surcharging or falsifying the account in any respect. Not only was the action of the court in approving

and passing the accounts *prima facie* evidence of its correct-
ness, but it is against the policy of the law to disturb such
settlements, especially after such 'a lapse of time, without
the strongest reasons.    In the present instance there is no
reason shown or alleged.

(2.) In disallowing the credits claimed in his accounts
rendered January 3 and February 7, 1896, respectively.
The account made up by the Register of Wills by direction
of the court and approved and passed by decree appealed
from, sets aside the settlement of his first account, charges
him with the whole sum which he received for rents, inter-
est and principal, and interest thereon from the date of its
receipt, but disallows him any commission or any credit for
the support of his wards.

The charge of interest is in direct opposition to a positive
provision of law.    Dennis' Probat Law, 91.    To charge him
with interest and disallow all commissions, is in conflict
with its spirit.    *Id.*, 90.

As to the disallowance for board and clothing, it is ad-
mitted that, as a general rule, a father is bound to support
his children, but it is equally the rule that where he is
without adequate means of doing so courts will allow him
to use a part of their means for that purpose—not for his
benefit, but for theirs.    *Newport* v. *Cook*, 2 Ashm. (Pa.) 332;
*In re Kane*, 2 Barb. Ch. R. 375 ; *In re Burke*, 4 Sandf. Ch.
R. 617.    Where another than the father is guardian the
court will allow the latter to pay the former for the board
of his children if his means are inadequate.    *Beasley* v.
*Watson*, 41 Ala. 234.    His affidavits, which were the only
way of introducing proof in the matter, clearly bring him
within the principle of these cases and numerous others
which could be cited.

(3.) In decreeing the payment to Mrs. Carrington, not-
withstanding the receipt and release given by her and her
husband.    A receipt in full, not under seal, is *prima facie*

evidence of an accord and satisfaction. *Levi* v. *Karrick*, 13 Iowa, 344; *Gueyette* v. *Bolton*, 46 Vt. 228.

That a release, under seal, as in this instance, operates as a bar to further claim on the part of Mrs. Carrington needs no citation of authorities; and no claim is made by her.

3. As to the decree requiring appellant's alleged sureties to pay money into court, it seems only necessary to say that it is based upon no due process of law either to bring them into court, advise them of any cause of action, or give them their day in court and opportunity for defence. That can only be done by a suit on their bonds.

*Mr. John Raum* and *Mr. A. L. Richardson* for the appellees :

The first error assigned by appellant, that the real estate owned by appellant's wife and from which the money in controversy was derived, belonged by right of curtesy to him during his life, was not presented to the court below, and cannot be considered by this court under Section 3 of Rule 5. The appellant, however, had no rights in said real estate as tenant by curtesy. The right of his wife to said realty arose as heir, and she was never actually seized of it, and her title being incomplete, appellant had no right as tenant by curtesy. *Jackson* v. *Johnson*, 5 Cowen (N. Y.) 182; *Ellsworth* v. *Cook*, 8 Paige (N. Y.) 643; *Davis* v. *Mason*, 1 Peters, 503.

2. Appellant's account of November, 1889, which was re-opened by the Orphans' Court, was his first annual or periodical account. The court regarded certain charges in said account illegal and directed appellant to restate the same. The court below had authority to do this. For periodical accounts are not judicial in their character, are merely *prima facie* evidence of their correctness, and may be reopened, rectified and changed on a subsequent accounting. Am. & Eng. Ency. L., Vol. 9, 143; *Spedden* v. *State*, 3 H. & J. (Md.) 251; *State* v. *Baker*, 8 Md. 44; Dennis, 110. The court below acted wisely in reopening said first account, because the

charge of $25 as attorney's fee for the preparation of said account is illegal. The guardian's commissions cover such expenses. The item of $230.94 for the expenses of the last sickness of Mrs. Rhodes and for a monument to her memory is illegal. Appellant is alone liable for such expenses.

3. The appellant, as the father of his wards, was legally bound for their support, and only in case he was in such indigent circumstances as to render him unable to maintain and educate his children, according to their future expectations, should the court make an allowance for their support. 2 Kent Com. 192; Am. & Eng. Encyc. L., Vol. 9, 100; Dennis, 94. If appellant was unable to maintain his children he should have made the fact known to the Orphans' Court and asked for an allowance for them. But at the time of his first account he did not pretend to be unable to support them.

The record fails to show that appellant is entitled to an allowance for his wards during the period covered by his second account. And if he were so entitled, his charges are not allowable, because they are disputed by the appellees and are not proven by competent evidence. Further, said charges, if allowed, would exceed the income of the estate, and expenditures exceeding the income are not permissible unless previously authorized by the court. Dennis, 90, Sec. 13.

4. The duty of a guardian is to invest the trust funds in safe securities, and he is liable for the loss resulting from his failure so to do. Dennis, 95; and so held by Mr. Justice Alvey in *Griffith* v. *Parks*, 32 Md. 7.

The Maryland act of 1798 (Dennis, 90, Sec. 13) provides that for no balance of money in his hands shall the guardian be charged interest, unless he shall consent to take the same on interest. This act refers to the balance which the guardian is permitted to keep on hand to meet current expenses, and was not intended to shield him from the payment of interest when he uses or neglects to invest the trust

estate. His use of or neglect to invest the estate is evidence of his consent to take it on interest.

The court below charges appellant with simple interest only and makes no rests in computing it. Appellant is guilty of the grossest misconduct. He has not only failed to invest the funds safely, but has wantonly and wilfully converted the estate to his own use and squandered it. Under such circumstances he is chargeable with compound interest. 2 Kent Com. 231; *Barney* v. *Saunders,* 16 Howard, 535; Dennis, 94. This is a case of such gross misconduct that appellant should be charged with compound interest computed upon six months' rests as stated in Dennis, 94, or at least upon annual rests as occurs in the case of *Barney* v. *Saunders.*

A guardian is entitled to compensation for the care of the trust estate, but when he is guilty of misconduct and his services are a detriment, he is not so entitled. The appellant has not cared for the estate, but has dissipated it. The law requires him to account at least once a year, but he has not accounted but twice in ten years. He is not entitled to compensation for his mismanagement. Dennis, 95; *Magruder* v. *Darnall,* 6 Gill, 269; Am. & Eng. Encyc. L., Vol. 9, 147. If a guardian borrows or speculates with the trust funds he is not entitled to compensation for his services. *Farwell* v. *Stein,* 46 Vt. 678; *Sequin's Appeal,* 103 Pa. 139; *Burke* v. *Turner,* 85 N. Car. 500.

The order upon the bondmen was issued upon petition, and is in accordance with the practice of the Orphans' Court.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

1. With respect to the first of these assigned errors, that of the right of the husband to curtesy in the land devised to his wife, there would seem to be no ground for serious question. It is contended on the part of the appellees that

the husband never acquired an estate by the curtesy, because his wife was never actually seized of the land, and her title being incomplete, the right by the curtesy did not attach in the husband. But the principle of non-seisin of the wife has no application to this case. It is very true, there can be no curtesy of a remainder or reversion. There are, says Sir William Blackstone, (2 Comm. 127,) "four requisites necessary to make a tenancy by the curtesy : marriage, seisin of the wife, issue, and death of the wife. 1. The marriage must be canonical and legal. 2. The seisin of the wife must be an actual seisin or possession of the lands; not a bare right to possess, which is a seisin in law, but an actual possession, which is a seisin in deed. And, therefore, a man shall not be tenant by the curtesy of a remainder or reversion." And this principle is fully supported by Lord Coke, in his Commentary upon Littleton. Co. Litt. 29, 30. Coke, in the passage just referred to, says, that the words, "seised in fee," mean a seisin in deed, not a seisin in law; and therefore a man shall not be tenant by the curtesy of a bare right, title, use, or of a reversion or remainder expectant upon an estate of freehold, *unless the particular estate be determined or ended during the coverture.* In this case, the particular estate of freehold, that of the life estate devised to the wife of the devisor, terminated in 1877, in the lifetime of Mrs. Rhodes, and thereupon the latter became seised in deed or in fact in fee as tenant in common, and the husband, upon the death of the wife, having had issue, became seized as tenant by the curtesy. The possession by a cotenant in common is sufficient to give curtesy to the husband of a tenant in common, the entry and possession of one being the entry and possession of all. Adams on Eject. 54; 4 Kent Comm. 387; 5 Burr. 2604; 17 Md. 442, 451.

It is clear, however, that, under the facts and circumstances of this case, as disclosed by the equity proceeding,

heretofore referred to, the husband of Mrs. Rhodes, the present appellant, is completely estopped from asserting any claim as tenant by the curtesy, as against the land in the possession of the purchaser, or those claiming under him. He has held himself out as having no such right; and whether his conduct was the result of ignorance or otherwise is quite immaterial. But, in respect to the proceeds of the sale of the land, and as against the rights of the children of Mrs. Rhodes, a different question is presented. This question will be adverted to hereafter.

2. As to the action of the court in setting aside and vacating the first account of the appellant, approved and passed by the court, November 8, 1889, we think there was error. It is true the principle has long since been settled, that accounts stated in and passed by the Orphans' Court, under the Maryland Testamentary Act of 1798, of executors, administrators and guardians, are but *prima facie* evidence of their correctness. But when they are impeached, the *onus* is upon the party impeaching them to show affirmatively wherein they are incorrect. This principle has been laid down in many of the Maryland cases. *Spedden* v. *State*, 3 H. & J. 251; *Gist* v. *Cockey*, 7 H. & J. 134; *Owens* v. *Collinson*, 3 G. & J. 37. And where an account, approved and passed by the court, has been standing for several years unquestioned, there must be clear proof of its incorrectness to justify its vacation and restatement. In the case of *Watkins* v. *Bevans*, 6 Md. 489, where an executor's account was of several years' standing, and the balance due the estate by it had been distributed, though not paid over, it was held to be error in the Orphans' Court to vacate the account without evidence of its incorrectness, and again bring the balance into the estate. The presumption is that the account is correct, until that presumption is overcome by sufficient affirmative proof offered by the party entitled to impeach the account. In this case there was no such proof offered, and the account ought not to have been disturbed

upon the simple application of one of the parties concerned for further accounting by the guardian. By the settlement of the account the guardian himself would be precluded, unless upon grounds of mistake, from asking for the vacation or modification thereof, because he had not been credited therein with the rents received and the interest upon the purchase money awarded to his children down to the date of that account. He has not attempted to disturb the account upon any such ground, or upon any ground whatever.

3. We think there was also error in requiring the appellant to be charged with the several amounts mentioned in the order of the 14th of February, 1896, with interest thereon, as directed by that order, and as charged in the account that was approved and passed by the court. We think, in view of the facts of this case, and in consideration of the fact that the guardian was entitled to the interest on the purchase money for the land of which his wife died seized, for his life, in lieu of his right as tenant by the curtesy, that no interest that has accrued on the proceeds of sale, since the date of the passage of his first account, should be charged against him. Upon fair equitable grounds he is entitled to this exoneration. Whether he should be allowed any sum for the maintenance and education of his wards, out of the principal sums to which they are entitled, depends upon his ability and circumstances in life to support them. A father is bound to support his own children, and he cannot, as a general principle, when guardian, claim the right to use the income of their property for that purpose, much less to disturb the principal. But there may be circumstances where both income and principal may be applied to such purpose. Schoul. Dom. Rel., Sec. 339. In this case, however, there is not evidence sufficient to enable us to pass upon that question. The subject, so far as the jurisdiction of the Orphans' Court can be exercised, is regulated by the provisions of the statute. Act 1798, Ch. 101, Subch. 12,

Secs. 10, 13. And as to the allowance of commission to the guardian and the amount thereof, that is a matter that rests in the sound discretion of the court below.

4. With respect to the charge in the account of $766.35, as due Margaret A. Carrington, one of the children, we think there was error in that. This child had married John Carrington, and had attained the age of about twenty-six years, when she, with her husband, on January 20, 1896, received of her father as guardian the sum of $567.46, declaring the same to be " in compromise and full settlement of whatever amount may be due me from him, and I hereby release and discharge him from all further liability or accountability to me whatever." This release was concurred in by the husband, and executed by both husband and wife, under their hands and seals. The money came to Mrs. Carrington as her separate estate under the Married Woman's Act of April 10, 1869, and she was entirely competent to contract in respect to it, and she has never attempted in any manner, so far as the record discloses, to question or impeach that release. We think it must be taken as conclusive as to Mrs. Carrington's interest.

5. There is still another assignment of error, and that is upon the order of the court of the 27th of March, 1896, ordering money to be brought into court by a trustee, and the sureties on the bond of the guardian. The order is, " that Henry M. Baker pay into the registry of this court the sum of $1,135.96, being the amount alleged to be held by him as trustee of the proceeds of the sale of premises No. 223 Twelfth street southeast ; and that said Baker pay into the registry of the court the further sum of $767.61, as surety on the bond of the said guardian, and that Louis K. Beatty and William W. W. Nally, as sureties on the bonds of said guardian, are hereby directed each to pay into the registry of the court the sum of $767.61 ; and this order shall be complied with in twenty days ; and a copy of this

order to be served upon each of said bondsmen within five days from this date."

We are not aware of any law, statutory or of any other kind, that authorizes an order of this character to be passed and enforced by the court exercising the jurisdiction of the Orphans' Court, as against sureties on a guardian's bond. The parties intended to be affected by the order were not before the court, and were not parties to the proceeding. The order of the court could not be enforced by execution, nor could process of contempt be issued thereon and enforced against the parties. They have their right to contest, in due form of law and in the proper tribunal, their liability for the amounts ordered to be brought into court. Until they have that right they cannot be subject to execution or contempt by a court of limited jurisdiction, such as the Orphans' Court. *Alexander* v. *Bryan,* 110 U. S. 414.

It follows that the orders of the 17th of January, 1896, and that of February 14, 1896, and also the order of the 25th of March, 1896, approving and passing the account stated under the preceding orders ; and the further order of March 27, 1896, directing the money to be brought into court, must be reversed, and the cause be remanded to the court below, that proceedings may be had not inconsistent with this opinion ; and that the cost of these appeals be paid out of the fund in the hand of the guardian ; and it is so ordered.

*Orders reversed and cause remanded.*